| Estado Libre Asociado de Puerto Rico TRIBUNAL DE APELACIONES PANEL VII | | |
|---|---|---|
| H. CALERO CONSULTING GROUP, INC. Apelada V. EDITH DÍAZ Y OTROS Apelante | KLAN202300929 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan Caso Núm.: SJ2019CV04942 (903 CIVIL) Sobre: COBRO DE DINERO - ORDINARIO |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de diciembre de 2023.

La apelante, Cellubeep Inc., solicita que revoquemos la sentencia en la que el Tribunal de Primera declaró HA LUGAR la demanda de cobro de dinero en su contra.

La apelada, H. Calero Consulting Group Inc., presentó su oposición al recurso.

Los hechos pertinentes a la controversia que hoy nos ocupa son los siguientes.

**I**

El 17 de mayo de 2019, la apelada presentó una demanda por cobro de dinero contra la apelante. La apelada alegó que la apelante contrató sus servicios de perito economista, para que estimara la compensación por daños que procedía reclamar en el caso civil K AC2015-0567 y se ha negado a pagarle por la totalidad de los servicios prestados.

La apelante negó las alegaciones en su contra y la existencia de una deuda líquida y exigible y presentó una reconvención.

Cellubeep adujo que la apelada incumplió con sus obligaciones contractuales, porque no presentó el informe final, entregó un borrador preliminar tardíamente plasmado de errores, se negó a ser depuesta y a comparecer al proceso judicial.

Según consta en la sentencia apelada, las partes estipularon en el Informe Preliminar los hechos a continuación. El 20 de noviembre de 2018, la apelada envió al Lcdo. Ramírez de Arellano una oferta de servicios profesionales, dirigida a la apelante. El 25 de enero de 2019, la señora Díaz firmó la propuesta que se convirtió en el contrato entre las partes. La apelada se obligó a: (1) analizar el contrato de servicios entre la apelante y Telecorp Sun Com, bajo el programa de venta de celulares, (2) preparar un banco de datos con los ingresos y gastos recibidos e incurridos por su cliente relacionados a dicho contrato, desde el año 2002 al presente, (3) preparar un estimado de la alegadas pérdidas de ingresos dejados de recibir por la apelante como consecuencia del contrato con el bufete Cancio, (4) analizar los ingresos de la apelante, según las planillas de contribución sobre ingresos desde el año 2002 al presente, (5) evidenciar la mitigación de daños, si es posible, (6) redactar un informe en español con los hallazgos, análisis y conclusiones de daños que sería presentado en el TPI Sala de San Juan, (7) reunirse con clientes y su representación legal, (8) preparar las preguntas sugeridas para testimonio en el tribunal y (9) comparecer a deposiciones y a declarar en el tribunal. Determinaciones de hecho 1-3 de la sentencia apelada estipulados en el Informe Preliminar.

El Informe Preliminar, además, incluye los hechos estipulados siguientes. La apelante pagó $5,200.00 por la Orden de Proceder. La apelante entregó el cheque número 6206 del Banco Santander de Puerto Rico a nombre de la apelada. El 23 de marzo de 2019, la apelada remitió al representante de la apelante, Peter

Acosta, copia del borrador del informe parcial para que lo revisara. La apelada pidió que hiciera los comentarios y revisiones, no más tarde del 25 de marzo de 2019 y antes de las cuatro de la tarde. La apelada hizo gestiones de cobro, previo a la presentación de la demanda. El 11 de abril de 2019 cursó una carta de cobro a la apelante y le ofreció un descuento del 12.5% de la factura pendiente de pago y del monto reclamado en la demanda. El caso Civil K AC2015-0567 culminó con sentencia de Estipulación de Desistimiento con perjuicio. Determinaciones de hecho 4-9 de la sentencia apelada estipulados en el Informe Preliminar.

Ambas partes estipularon los documentos a continuación: (1) Carta del 20 de noviembre de 2018 firmada por Edith Díaz el 25 de enero de 2019, (2) Informe Final del 28 de marzo de 2019, (3) Borrador del Informe del 26 de marzo de 2019 y (4) los correos electrónicos entre las partes.

Durante la vista en su fondo se presentaron los testimonios de la señora Heidie Calero y el señor Pedro Acosta. El TPI determinó los hechos siguientes. La apelante le pidió a la apelada una propuesta de servicios para un informe pericial que debía presentar en el mes de noviembre de 2018. La solicitud se realizó mediante un correo electrónico en el que la apelante anejó copia del informe preparado por Estudios Técnicos Inc. La señora Heidie Calero es la dueña y presidenta de HCCG, tiene 47 años en la práctica de Economía y se encarga de todos los pagos y administración de esa empresa. El 21 de noviembre de 2018, la apelada informó a la apelante que el costo del informe podía oscilar de $8,500 hasta más de $30,000.00, cuando los procedimientos son extremadamente litigiosos. La señora Calero recomendó a la apelante que esperara a que el tribunal le concediera utilizar perito. Determinaciones de Hecho 1-4 de la sentencia apelada.

El TPI también determinó los hechos a continuación. El 14 de enero de 2019, la apelada recibió copia de una resolución del caso K AC2015-0567, en la que el tribunal concedió 20 días a la apelante para presentar el informe pericial. La señora Calero envió la propuesta de sus servicios a la apelante el 14 de enero de 2019, pidió cinco mil dólares ($5,000.00) al momento y el 4% aplicable al impuesto sobre Ventas y Uso. La apelante contrató a la apelada el 25 de enero de 2019, mediante la firma y aceptación de la propuesta de servicios del 20 de noviembre de 2018. Las partes acordaron que la apelada tenía de 5 a 7 semanas, después de recibir toda la información solicitada, para terminar el informe. El costo del informe se determinaría, a base de una tarifa de $195 la hora por los servicios de la señora Calero y $175.00 por los servicios de otros economistas. Los contratantes acordaron el pago de una cantidad fija de cinco mil dólares ($5,000.00) al comienzo del estudio pericial. La apelada se limitó a presentar el informe pericial, ya que no compareció a deposiciones, ni a declarar en el tribunal. Los correos electrónicos entre las partes evidenciaron que la apelante proveyó la información solicitada por la apelada. El contrato entre las partes no autorizó a la apelada a subcontratar otros economistas que no fueran empleados de HCCG. Así lo confirmó la apelada en su testimonio. Determinaciones de hecho 5-11 de la sentencia apelada.

La sentencia, además, incluyó los hechos siguientes. Las partes se reunieron previo a firmar el contrato. Durante esas reuniones discutieron estrategias para que el tribunal concediera una extensión de tiempo para presentar el informe pericial y acordaron que la apelante iba a preparar una carta justificando la dilación. La señora Calero declaró que la apelante preparó parte del contenido de esa carta y que luego de varios cambios, la demandante preparó la carta final que se presentó en una moción

en el tribunal. El 21 de enero de 2019, la apelada notificó a la apelante que la señora Calero estaba en medio de una mudanza y que tenía un viaje pautado del 14 de febrero al 1 de marzo de 2019. Aun así, la apelante contrató sus servicios el 25 de enero de 2019. El 11 de febrero de 2019, la apelada informó a la apelante que buscaría un recurso para que la ayudara con el modelo de daños, mientras la señora Calero estaba de viaje. El 12 de febrero de 2019, el señor Pedro Acosta le replicó a la señora Calero. *Si dejas a alguien adelantando me dejas saber y cualquier pregunta se puede comunicar conmigo para lo(s) que necesite.* El 13 de febrero de 2019 a las 6:15 p.m., la señora Calero notificó a la apelante que habló con Diego Iribarren y le envió la información que había recibido para que conceptualizara el modelo de daños que la señora Calero discutió con él. El señor Acosta le replicó SUENA BIEN y se mantuvo en comunicación con Iribarren y con el señor Daniel Santiago. Determinaciones de hecho 12-18 de la sentencia apelada.

Por último, el TPI determinó los hechos a continuación. El 23 de marzo de 2019, la apelada envió a la apelante el Borrador de Informe de Daños e informó que recibiría los comentarios y revisiones el lunes, 25 de marzo, mientras se terminaran los apéndices. El 28 de marzo de 2019, la apelada remitió el informe de daños final a los abogados de la apelante con las correcciones solicitadas. Las partes estipularon que el 5 de abril de 2019, la apelada le remitió al señor Acosta la factura por 233.5 horas trabajadas y copia del Relevo de Hacienda. La factura no se discutió en el juicio, como tampoco su procedencia, ni cómo se determinó la cantidad de horas facturadas. La señora Calero declaró que la apelante le adeuda $38,633.40 por los servicios facturados y no pagados. Determinaciones de Hecho 19-22 de la sentencia apelada.

El TPI concluyó que las partes acordaron que la demandante cobraría sus servicios por la cantidad de horas trabajadas. La evidencia presentada y el testimonio de la señora Calero convencieron al foro primario de que también acordaron que la facturación podía fluctuar dependiendo de lo litigioso del asunto. Igualmente quedó convencido de que la apelada cumplió con sus obligaciones contractuales. No obstante, hizo hincapié en que durante el juicio no se presentaron las facturas, no se discutió cómo se determinaron las horas facturadas, ni cuál fue la proporción entre las dos tarifas incluidas en el contrato entre las partes. El tribunal advirtió que solo tenía el testimonio de la señora Calero de que la apelante le debía $38,633.40.

Aunque el foro apelado dio credibilidad al testimonio de la señora Calero, determinó la cantidad adeudada a base del siguiente análisis. El TPI partió de la comunicación del 21 de noviembre de 2018, en la que la señora Calero advirtió a la apelante que el costo de sus servicios podía fluctuar entre $8,500.00 hasta más de $30,000.00, si los procedimientos eran extremadamente litigiosos. El TPI descartó que la deuda fuera mayor de treinta mil ($30,000), porque la apelada únicamente preparó el informe y no hizo trabajos propiamente relacionados al litigio.

Posteriormente le restó a los $30,000.00 los cinco mil dólares ($5,000.00) que la apelante pagó previamente y determinó que el tope de facturación era veinte cinco mil dólares ($25,000.00). A esa cantidad le aplicó el descuento de 12.5% que la apelada le ofreció a la apelante equivalente a $3,125.00. Según el TPI, la nueva cuantía era de $21,875.00.

Finalmente, el TPI determinó que debía restar el 4% de impuesto que la apelada incluyó en la cuantía reclamada e hizo el ejercicio matemático siguiente. Según el tribunal, el 4% de los

$25,000.00 antes del descuento de 12.5% es $1,000.00. A los $21,875.00 les restó esos mil dólares ($1,000.00) y resolvió que la apelada tenía derecho a facturar $20,875.00.

El 15 de septiembre de 2023, el TPI declaró HA LUGAR la demanda y ordenó a la apelante pagar a la apelada $20,875.00 y los intereses desde la fecha de la sentencia hasta su saldo.

Inconforme, la apelante presentó este recurso en el que alega que:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR UNA DETERMINACIÓN ARBITRARIA Y ABUSANDO DE SU DISCRECIÓN JUDICIAL DECLARANDO CON LUGAR LA DEMANDA PRESENTADA, SIN QUE LA PARTE DEMANDANTE RECURRIDA HAYA PRESENTADO EVIDENCIA QUE SUSTENTARA SUS ALEGACIONES, POR LO QUE LA DEUDA RECLAMADA ES UNA NO VENCIDA NI LÍQUIDA NI EXIGIBLE.

## II

### A.

Los tribunales apelativos actuamos esencialmente como foros revisores. Nuestra tarea principal es examinar cómo los tribunales inferiores aplican el derecho a los hechos particulares de cada caso. El Tribunal de Primera Instancia es el foro que desarrolla el expediente completo del caso, que incluye los hechos determinados como ciertos, a base de la prueba presentada. El ejercicio de nuestra función de aplicar y pautar el derecho requiere saber cuáles son los hechos y esa es tarea del Tribunal de Primera Instancia. Los tribunales apelativos no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad, ni hacemos determinaciones de hecho, ya que esa es función del Tribunal de Primera Instancia. *Gómez Márquez v. Periódico El Oriental Inc.,* 203 DPR 783, 792-793 (2020); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770. 771 (2013); *Rivera Menéndez v. Action Service,* 185 DPR 431, 444-445 (2012).

Los foros apelativos aceptamos como correctas, las determinaciones de hechos de los tribunales de instancia, al igual que su apreciación de los testigos y el valor probatorio de la prueba presentada en sala. Esta deferencia obedece a que las tareas de adjudicar credibilidad y determinar lo que realmente ocurrió, depende en gran medida de la exposición del juez o la jueza a la prueba presentada. Los jueces de instancia son los que tienen la oportunidad de ver el comportamiento de los testigos mientras ofrecen su testimonio y escuchar su voz. No obstante, los tribunales apelativos podemos descartar las determinaciones de hecho del Tribunal de Primera Instancia cuando el juzgador de los hechos actuó con pasión, prejuicio o parcialidad o incurrió en error manifiesto. La deferencia cede cuando, luego de analizar la totalidad de la evidencia, quedamos convencidos de que las conclusiones del foro primario confligen con el balance más racional, justiciero y jurídico de toda la prueba recibida. *Dávila Nieves v. Meléndez Marín,* supra, págs. 771-772; *Méndez v. Morales,* 142 DPR 26, 36 (1996); *Rivera Pérez v. Cruz Corchado,* 119 DPR 8, 14 (1987).

La parte apelante que señala algún error relacionado con la suficiencia de la prueba testifical o con la apreciación que hizo el Tribunal de Primera Instancia tiene que presentar una exposición narrativa de la prueba para que el tribunal apelativo pueda cumplir cabalmente con su función revisora. *Álvarez v. Rivera,* 165 DPR 1, 13 (2005).

La falta de indicios de que el foro primario incurrió en error manifiesto, prejuicio, parcialidad o pasión al aquilatar la evidencia desfilada, impide al foro revisor intervenir con la apreciación de la prueba. La ausencia de la prueba oral no permite que el Tribunal de Apelaciones tenga los elementos para descartar la apreciación

razonada y fundamentada del foro de instancia. *Hernández Maldonado v. The Taco Maker Inc.,* 181 DPR 281, 289 (2011).

En *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117 (2019), el Tribunal Supremo de Puerto Rico resolvió en un caso de revisión administrativa que el recurrente que impugna las determinaciones de hecho basadas en la prueba oral está obligado a traer a la consideración del foro revisor la transcripción de la vista celebrada o una exposición narrativa de la prueba. Los tribunales apelativos no deben intervenir con la apreciación de la prueba oral de la agencia, cuando no tienen forma de evaluar la evidencia presentada, debido a que la parte promovente no elevó una transcripción o una exposición narrativa de tal prueba.

Tan reciente como en *Pueblo de Puerto Rico v. Pérez Delgado,* 2023 TSPR 35, 211 DPR ___ (2023), el Tribunal Supremo de Puerto Rico ratificó que los recursos apelativos en los que se cuestiona la apreciación de la prueba del foro primario tienen que estar acompañados de una transcripción o una exposición narrativa de la prueba. El peticionario que cuestiona la apreciación de la prueba está obligado a ubicar al tribunal revisor en tiempo y espacio sobre lo ocurrido en el foro primario. La forma de hacerlo es a través de alguno de los mecanismos de recopilación de la prueba oral. Los mecanismos reconocidos son la transcripción de la prueba, la exposición estipulada o la exposición narrativa. Los tribunales de mayor jerarquía no pueden cumplir su función revisora a cabalidad, sin la prueba que el foro primario tuvo ante su consideración.

Las disposiciones reglamentarias que gobiernan los recursos ante el Tribunal de Apelaciones deben observarse con rigurosidad. Los abogados están obligados a cumplir fielmente el trámite prescrito en las leyes y en los reglamentos aplicables para el perfeccionamiento de los recursos. No puede quedar a su arbitrario

decidir qué disposiciones aplican y cuándo. El peticionario es quien tiene la tarea de presentar al foro revisor la prueba oral al amparo de la cual pretende impugnar las determinaciones del tribunal *a quo. Pueblo de Puerto Rico v. Pérez Delgado,* supra; *Hernández Maldonado v. The Taco Maker Inc.,* supra, pág. 290.

La Regla 76 (A) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII, establece los requisitos para presentar la transcripción. Su texto es el siguiente:

> Transcripción de la prueba oral en recursos de apelación y certiorari:
>
> Una parte en una apelación o en un recurso de certiorari ante el Tribunal de Apelaciones notificará al Tribunal de Apelaciones no más tarde de diez días desde que se presentó el escrito de apelación o se notificó la expedición del auto solicitado, que se propone transcribir la prueba oral. En esa moción, la parte proponente expresará las razones por las cuales considera que la transcripción es indispensable y que propicia mayor celeridad en los procesos que la presentación de una exposición estipulada o de una exposición narrativa.

El inciso B de la Regla 76, *supra,* dispone que, una vez autorizada la transcripción, su proponente podrá solicitar al Tribunal de Primera Instancia la regrabación de los procedimientos. La moción a esos efectos será presentada dentro de los diez (10) días siguientes a la notificación de la orden del Tribunal de Apelaciones,

Las disposiciones reglamentarias pertinentes también establecen los términos para la presentación de la exposición narrativa. Regla 76.1 del Tribunal de Apelaciones. 4 LPRA Ap. XXII. La Regla 76.1(A)(1) establece que la parte apelante deberá notificar a la apelada que presentará la exposición narrativa. El término para hacerlo es dentro de los diez días de notificado el escrito de apelación. 4 LPRA Ap. XXII-B. El inciso 2 de ese precepto dispone que la parte apelante preparará y someterá al Tribunal de

Apelaciones un Proyecto de Exposición Narrativa de la Prueba Oral pertinente al recurso. Regla 76.1 (A)(2), 4 LPRA Ap. XXII-B.

Por su parte, la Regla 19 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 19, dispone que la parte apelante que señala un error relacionado a la suficiencia de la prueba testifical o con la apreciación errónea del tribunal apelado, tiene que someter una transcripción, o una exposición estipulada o una exposición narrativa de la prueba.

**III**

La parte apelante ataca la apreciación de la prueba y la credibilidad que el TPI dio a los testimonios ante su consideración. Cellubeep Inc. aduce que el testimonio de la señora Calero no estableció la existencia de una deuda vencida, líquida y exigible. Según la apelante, la señora Calero se limitó a reclamar una deuda de $38,633.40, pero no presentó prueba para corroborar su existencia, no especificó las gestiones por las que reclama esa cantidad, el tiempo que le tomó realizar el trabajo y las tarifas que facturó. La apelante argumentó que el TPI reconoció que la señora Calero no evidenció los trabajos realizados y que pasó por alto el testimonio de Pedro Acosta.

La apelada sostiene que estamos impedidos de realizar nuestra función revisora, porque la apelante no sometió una transcripción, ni una exposición estipulada o narrativa, que nos permita evaluar la apreciación de la prueba y adjudicación de credibilidad del foro primario.

H. Calero Consulting tiene razón. La parte cuestiona la apreciación de la prueba testifical que hizo el foro primario. Sin embargo, incumplió con la Regla 76 (A) del Reglamento del Tribunal de Apelaciones, *supra*, porque no informó el método que utilizaría para presentar la exposición narrativa de la prueba oral. Nos es imposible ejercer nuestra función revisora sobre el valor

probatorio que el TPI dio a los testimonios ante su consideración, en ausencia de una transcripción de la prueba o una exposición estipulada o narrativa.

La apelante tiene el peso de la prueba para demostrar que el testimonio de la señora Calero no estableció la existencia de una deuda vencida, líquida y exigible. No obstante, para que podamos evaluar si la apelada demostró los elementos de su causa de acción es necesario que examinemos la prueba que desfiló ante el TPI. La imposibilidad de evaluar y revisar la prueba y los testimonios presentados en el juicio en su fondo, no nos permite intervenir con la adjudicación de credibilidad del tribunal sentenciador que vio y escuchó la prueba de primera mano. Ante ese escenario, estamos obligados a respetar la norma de la deferencia que cobija a las decisiones del TPI.

**IV**

Por lo antes expuesto, se confirma la sentencia apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones