Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| JOSÉ ALEXIS IRIZARRY SEMIDEY<br><br>Recurrido<br><br>v.<br><br>JOSÉ ANTONIO IRIZARRY CRUZ Y OTROS<br><br>Presunto Incapaz<br><br>MARTA ACOSTA MATOS<br><br>Peticionaria | KLAN202400799 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Sobre: Declaración de Incapacidad y Designación de Tutor<br><br>Caso Núm. PO2023RF00537 |
| --- | --- | --- |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 19 de febrero de 2025.

La apelante, señora Marta Yolanda Acosta Matos, comparece ante nos para que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de Ponce, el 10 de julio de 2024, enmendada el 15 de julio de 2024 y notificada en igual fecha. Mediante el referido dictamen, el foro *a quo* declaró la incapacidad del señor José Antonio Irizarry Cruz para regir su persona y sus bienes y nombró tanto a la apelante, como al aquí apelado, el señor José Antonio Irizarry Semidey, como sus tutores legales. Lo anterior dentro de una acción sobre declaración de incapacidad y nombramiento de tutor promovida por el apelado.

Por los fundamentos que anteceden, se modifica la *Sentencia* apelada.

**I**

El 14 de junio de 2023, el apelado presentó la causa de acción de epígrafe, intitulada *Petición de Declaración de Incapacidad y*

Número Identificador

SEN2025 _____

*Nombramiento de Tutor.* En la misma, solicitó que se declarara la incapacidad de obrar de su señor padre, José Antonio Irizarry Cruz, y, por consiguiente, que fuera designado como su tutor. A fin de sostener la procedencia de su petitorio, el apelado planteó que el señor Irizarry Cruz había sido diagnosticado con *Alzheimer*, condición que limitó sus funciones fisiológicas y que lo mantenían en un estado mental incapacitante para regir su persona y sus bienes. Añadió que, luego de que el récord médico de su padre fuera examinado por un médico, este recomendó evaluar personalmente al señor Irizarry Cruz en un mínimo de seis (6) visitas. Sobre dicho particular, el apelado indicó que la referida revisión médica no pudo efectuarse, ello a instancias de la apelante quien, según alegó, no permitía a los hijos de Irizarry Cruz relacionarse con él. El apelado expuso que, ante tal situación, el galeno estaba disponible para comparecer e ilustrar al tribunal sobre la condición de su padre, por lo que requirió que se ordenara realizar las visitas médicas en cuestión.

En cuanto a su solicitud para ser designado como el tutor del señor Irizarry Cruz, el apelado efectuó una relación de algunas de las propiedades y fuentes de ingreso de su padre y afirmó que, de ser nombrado como tal, habría de ejercer su función sin remuneración alguna. A su vez, respecto a la aquí apelante, indicó haber radicado una orden de protección en su contra, ello al amparo de las disposiciones de la Carta de Derechos y la Política Pública del Gobierno a Favor de los Adultos Mayores, Ley 121-2019, 8 LPRA sec. 1511 *et seq.*, por alegados sucesos constitutivos de maltrato y explotación financiera. Añadió, también, que, durante los trámites de dicha acción, la apelante formalizó su relación con el señor Irizarry Cruz al contraer nupcias, por lo que, ante la alegada incapacidad de este, se presentó una demanda independiente sobre

nulidad matrimonial. Así, al amparo de los antedichos argumentos, el apelado solicitó que se proveyera de conformidad con su súplica.[1]

Así las cosas, y tras varios trámites, el 26 de julio de 2023, la Oficina de la Procuradora de Familia compareció al caso mediante documento intitulado *Informe Fiscal.* En el mismo, notificó haber examinado la petición promovida por el apelado y le requirió proveer cierta documentación adicional.

Por su parte, mediante *Réplica a Petición* del 11 de septiembre de 2023, el señor Irizarry Cruz compareció ante el tribunal y se expresó en torno a la petición del apelado. En el pliego, negó tener un diagnóstico médico incapacitante y sostuvo que, de proceder la declaración de incapacidad en controversia, la apelante, por razón de ser su esposa, era la persona llamada a ser su tutor legal. De este modo, el señor Irizarry Cruz solicitó al Tribunal de Primera Instancia que denegara la solicitud del apelado.

Luego de ciertas incidencias, particularmente el cumplimiento del apelado con el requerimiento de documentos por parte de la Oficina de la Procuradora de Familia, el 2 de noviembre de 2023, la aquí apelante compareció al pleito y replicó a los argumentos del apelado. En particular, expresó que, si bien, el señor Irizarry Cruz tenía cierto diagnóstico de salud, el mismo no era incapacitante. A su vez, aclaró que, contrario a lo alegado, nunca le negó al peticionario el acceso a su señor padre a fin de que se relacionaran, y se reafirmó en que, de declararse la incapacidad de su esposo, a ella le correspondería ejercer su tutela. De esta forma, la apelante

---

[1] El apelado acompañó su petición con los siguientes documentos: 1) Certificado de Nacimiento del señor Irizarry Cruz; 2) Certificado de Matrimonio del señor Irizarry Cruz y la apelante; 3) Certificado de Nacimiento del apelado; 4) *curriculum vitae* del doctor Ángel E. Michel Terrero;  5) copia del informe y/ o certificación médica sobre el diagnóstico emitido por el doctor Carlos Otero Rodríguez; 6) copia de la Licencia de Conducir del señor Irizarry Cruz; 7) Certificado Negativo de Antecedentes Penales; 8) Declaración Jurada suscrita por el apelado, aceptando el cargo de tutor; 9) boleta de información personal del apelado; 10) Certificación Negativa de ASUMe del apelado; 11) solicitud de Certificación de Registro de Poderes y Testamentos; 12) Certificación Negativa del CRIM del apelado y; 13) Certificación de Deuda del Departamento de Hacienda.

solicitó que se declara *No Ha Lugar* la *Petición de Declaración de Incapacidad y Nombramiento de Tutor* de epígrafe.

El Tribunal de Primera Instancia refirió el caso de autos a la Unidad de Familia y Asuntos de Menores, a fin de que efectuara un estudio socio económico del señor Irizarry Cruz. Como resultado de la gestión encomendada, el 27 de marzo de 2024, la Trabajadora Social designada emitió el correspondiente *Informe Socioeconómico.* Conforme surge del mismo, la Funcionaria efectuó las entrevistas correspondientes a las partes aquí en litigio, visitó el hogar del señor Irizarry Cruz, discutió el caso con el doctor Carlos Otero Rodríguez, neurólogo del presunto incapaz, y revisó la documentación pertinente a su historial familiar, a sus condiciones de salud y a su situación económica. A raíz de ello, concluyó que el señor Irizarry Cruz mostraba un deterioro de salud de la condición de demencia que padecía desde el año 2019, la cual, por ser de carácter progresivo, lo limitaba para encargarse, por sí, de su persona y sus bienes. Añadió que, según sus hallazgos, la apelante era quien se encargaba de los cuidados personales, médicos y financieros del señor Irizarry Cruz. A su vez, expresó que, de acuerdo a los resultados de la investigación, la dinámica familiar entre Irizarry Cruz y sus hijos se había visto afectada por la disfuncionalidad en la comunicación entre estos y la apelante, lo que redundó en un número de pleitos y controversias entre las partes, relacionadas a los bienes del alegado incapaz y en la solicitud de nulidad matrimonial antes aludida. Así, a tenor con los resultados de su investigación, la Trabajadora Social concluyó que el señor Irizarry Cruz necesitaba de la asistencia constante de una persona para cuidar de sus condiciones de salud y sus finanzas y, a su vez, que resultaba conveniente que los hijos del señor Irizarry Cruz tuvieran acceso a su información médica y financiera.

Estando en trámite los asuntos entre los comparecientes, el 9 de abril de 2024, la apelante presentó una *Moción en Cumplimiento de Orden,* en virtud de la cual formalmente peticionó que se le nombrara como la tutora legal de su esposo. Específicamente, indicó que este se encontraba incapacitado para regir su persona y sus bienes, toda vez sus padecimientos de *Alzheimer,* demencia y diabetes. En atención a ello, expresó estar habilitada para ejercer la tutela legal de su esposo y solicitó al Tribunal de Primera Instancia que proveyera de conformidad.[2]

Tras ciertas incidencias, el 22 de abril de 2024, la apelante y el señor Irizarry Cruz presentaron sus respectivos escritos de réplica sobre el *Informe Socioeconómico* suscrito por la Trabajadora Social designada al caso. Por su parte, días después, el 30 de abril de 2024, la Procuraduría de Asuntos de Familia presentó un escrito intitulado *Segundo Informe Social.* Específicamente, se tomó conocimiento de la petición radicada por la apelante y expresó que esta cumplió con la presentación de los documentos requeridos a los fines de evaluar solicitud de nombramiento de tutor legal.

---

[2] La apelante acompañó su solicitud con los siguientes documentos: a) Certificado de Nacimiento de la Peticionaria, señora Marta Yolanda Acosta Matos; b) Certificado de Nacimiento del presunto incapaz, señor José Antonio Irizarry Cruz: c) Certificado de Matrimonio, señora Marta Yolanda Acosta Matos y el señor José Antonio Irizarry Cruz.; d) copia de la última Licencia de Conducir de Puerto Rico de la Peticionaria, señora Marta Yolanda Acosta Matos; e) copia de la última Licencia de Conducir de Puerto Rico del presunto incapaz, señor José Antonio Irizarry Cruz; f) Tarjeta de Identificación Electoral de la Peticionaria, señora Marta Yolanda Acosta Matos; g) Tarjeta de Identificación Electoral del presunto incapaz, señor José Antonio Irizarry Cruz; h) Tarjeta de Seguro Social del presunto incapaz, señor José Antonio Irizarry Cruz; i) Tarjeta de Medicare Health Insurance del presunto incapaz, señor José Antonio Irizarry Cruz; j) Tarjeta del Plan Médico MCS Classicare del presunto incapaz, señor José Antonio Irizarry Cruz; k) Récord de vacunas Pfizer del presunto incapaz, señor José Antonio Irizarry Cruz; l) Récord de vacunas con la Farmacia San Pedro de Lajas del presunto incapaz, señor José Antonio Irizarry Cruz; m) Registro de Vacunas para Adultos del presunto incapaz, señor José Antonio Irizarry Cruz; n) Tarjeta de Vacunas de COVID-19 del presunto incapaz, señor José Antonio Irizarry Cruz; o) Tarjeta de Vacunas de COVID-19 del año 2023 del presunto incapaz, señor José Antonio Irizarry Cruz; p) Certificado Negativo de Antecedentes Penales expedido por la Policía de Puerto Rico de la Peticionaria, señora Marta Yolanda Acosta Matos; q) Certificación Negativa de Caso de Pensión Alimentaria de la Administración para el Sustento de Menores (ASUMe) de la Peticionaria, señora Marta Yolanda Acosta Matos; r) Certificación de la Corte de Quiebras de los Estados Unidos para el Distrito de Puerto Rico de la Peticionaria, señora Marta Yolanda Acosta Matos; s) Información Personal del(de la) Aspirante a Tutor(a) y de la Persona a ser Tutelada (Formulario OAT 1462); t) Declaración Jurada suscrita por la Peticionaria sobre los bienes e ingresos de su esposo, el señor José Antonio Irizarry Cruz; u) Declaración Jurada de la Peticionaria, señora Marta Yolanda Acosta Matos, sobre aceptación del cargo de Tutora Legal, sobre conocimiento de las funciones, deberes y responsabilidades del cargo, de no tener crédito pendiente contra su esposo y que no se ha acogido a procedimiento alguno en el Tribunal de Quiebras.

Cumplidos los procesos de rigor, el 9 de julio de 2024, dio inicio el juicio en su fondo. Conforme surge de la *Minuta* pertinente, todas las partes involucradas comparecieron debidamente representadas. En apoyo a su solicitud, el apelado ofreció su declaración, así como el testimonio del doctor Ángel E. Michel Terrero. Por su parte, la aquí apelante prestó su testimonio a los efectos de prevalecer en su petición. Por parte del Ministerio Público compareció la Procuradora de Asuntos de Familia.

El primero de los testigos en prestar su declaración lo fue el doctor Michel Terrero. Conforme surge de la transcripción de los procedimientos orales, al ser inquirido, indicó haber evaluado al señor Irizarry Cruz en, al menos, siete (7) ocasiones, en todas, acompañado por la aquí apelante. Indicó que, en la primera de las evaluaciones, lo notó pasivo, desorientado en tiempo, incoherente y confundido. Añadió que, ante ello, lo sometió a una prueba denominada *mini mental* para determinar su estado cognitivo y neurológico, consistente, la misma, en la repetición de ciertas preguntas durante un lapso de tiempo determinado, adjudicándosele un valor a cada renglón de preguntas. Al expresarse sobre el resultado, el testigo indicó que Irizarry Cruz no cumplió con los valores esperados, puesto que no recordaba las palabras que debía repetir, no siguió las instrucciones que se le impartieron y no mostró coordinación. A su vez, relató sus impresiones sobre la progresión de la condición de Irizarry Cruz en cada una de las visitas subsiguientes, y se reafirmó en que este mostraba, cada vez más, un retroceso en sus funciones. Específicamente, sostuvo que no se mostraba orientado, no reconocía a las personas, caminaba con dificultad, entre otros rasgos de conducta de lo que calificó como una incapacidad cognitiva de conocimiento. Ahora bien, al ser inquirido sobre la

apariencia del señor Irizarry Cruz, el doctor Michel Terrero sostuvo que siempre estaba aseado y con buen aspecto físico.

Durante su interrogatorio, el testigo fue confrontado con una certificación médica que suscribió respecto al señor Irizarry Cruz el 1 de abril de 2024, ello a instancias del aquí apelado. Tras autenticarse el referido documento, el mismo se admitió en evidencia. Al expresarse sobre su contenido, el testigo sostuvo que versaba sobre las impresiones consignadas en el récord médico del paciente, con las correspondientes conclusiones diagnósticas de su condición.

Al ser contrainterrogado por la representación legal de la apelante, el testigo se reafirmó en el buen aspecto físico del señor Irizarry Cruz cada vez que llegaba a su oficina. De igual forma, expresó que su condición de demencia generaba una serie de cambios y necesidades sujetas a un proceso de adaptación, que podían afectarse de alterarse el entorno del paciente, lo que redunda en crearle inestabilidad. Por su parte, a preguntas del representante legal del señor Irizarry Cruz, el doctor Michel Terrero respondió sobre los métodos que se reconocen para poder llegar a un diagnóstico de *Alzheimer*. Al ser inquirido sobre la certificación médica admitida en evidencia, indicó que utilizó información médica anterior a su intervención para llegar a la conclusión de que Irizarry Cruz padecía la referida condición. A su vez, añadió que, tras evaluarlo físicamente, concluyó que este también padecía de diabetes y de hipertensión.

El testigo fue contrainterrogado por la Procuradora. Al ser inquirido, afirmó que su diagnóstico sobre incapacidad cognitiva equivalía a uno de *Alzheimer*. Añadió que el señor Irizarry Cruz se encontraba en un estado severo de su condición, y sostuvo en que la misma era incurable, progresiva e irreversible, por lo que, adujo, los medicamentos que se le administraban solo servían para

retrasar la progresión de la misma. A tenor con ello, el testigo fue enfático en cuanto a que el señor Irizarry Cruz, estaba incapacitado para manejar sus bienes y las actividades propias del diario vivir. Sobre ello, sostuvo que este no podía estar solo, que había perdido la capacidad de estar orientado, de comunicarse y de seguir directrices de forma adecuada. Así, al preguntársele sobre su prognosis respecto a la condición del señor Irizarry Cruz, ello a la luz de sus evaluaciones, el testigo la calificó como pobre.

El segundo testigo en declarar lo fue el aquí apelado. En lo concerniente, indicó ser pensionado, y expuso que, sus padres se divorciaron cuando él tenía diecisiete (17) años de edad. Al abundar sobre la relación que tenía con su señor padre, expresó que eran muy unidos, que hacían negocios y trabajaban juntos luego de que este se pensionara como empleado de la Autoridad de Energía Eléctrica. Sobre ello indicó que, advino a ser tutor legal de su padre en el Seguro Social porque este estaba incapacitado, cargo que, conforme expresó, ejerció hasta que Irizarry Cruz cumplió los sesenta (60) años. Al proseguir con su testimonio, el apelado hizo una relación de todas las propiedades del señor Irizarry Cruz: casas, apartamentos, vehículos, cuentas bancarias y pensiones. Específicamente, indicó que, en su momento, se encargaba de dar mantenimiento a las propiedades, y que siempre dialogaba con su padre sobre las mismas. Al proseguir, expresó que, desde cierto momento, el señor Irizarry Cruz comenzó a llamarlo para discutir y para reclamarle que no lo visitaba. Sobre dicho particular, expresó que, durante las llamadas, una tercera persona intervenía en las conversaciones y afirmó que se trataba de la apelante.

En su declaración, el apelado relató que, para el año 2017, comenzó a notar comportamientos extraños en su padre, incluyendo episodios en los que lo confundía. Indicó que, tras visitarlo para asistirlo en alguna necesidad durante el Huracán María, notó que al

señor Irizarry Cruz se le perdían documentos, las llaves de los carros y el teléfono. Ante ello, expresó que le sacó una cita con un especialista, pero que su padre se negó a ir, aduciendo que ya visitaba un neurólogo, el doctor Carlos Otero Rodríguez. Al continuar con su relato, indicó que, para el tiempo de la pandemia, lo llevó a una cita con el doctor Otero Rodríguez, que no pudo llevarse a cabo y que, desde dicho momento cortó toda comunicación con su padre, ello a instancias de la aquí apelante. Indicó que supo de su padre en una ocasión en el que este fue recluido en un hospital, y que, dado a que la apelante no se encontraba, pudo visitarlo. Sobre ello, afirmó que él y su hermana se quedaron con Irizarry Cruz durante siete (7) días y que, durante la estadía, este estaba agresivo y enajenado. El testigo expresó que, durante ese periodo, la apelante no se comunicó con ellos, no visitó a Irizarry Cruz, no colaboró con asistirlo, ni le llevó comida. Añadió que, tras ser dado de alta, trasladó a su padre a la residencia de su hermana y que, al cabo de algunas horas, dado a que Irizarry Cruz se descompensó, se comunicaron con la apelante, quien lo buscó y se hizo responsable de su cuidado. Según declaró, al paso de varios días, el señor Irizarry Cruz fue hospitalizado nuevamente, hecho que conoció a través unos familiares. Sobre este evento, se reafirmó en que la apelante le impidió el acceso a su padre, razón por la cual no pudo visitarlo. Indicó que, tras ello, intentó acudir a mecanismos legales para poder ver a su padre, mas sostuvo que nunca más pudo tener comunicación directa con él.

En cuanto a su petición, el apelado expresó al tribunal que no interesaba remuneración alguna por el ejercicio de la tutela de su señor padre, y que no tenía crédito alguno contra este. Por su parte, al ser inquirido sobre su Certificado de Antecedentes Penales, indicó que no había sido convicto por la comisión de algún delito grave.

Igualmente, indicó no tener deuda alguna en ASUMe, el CRIM, ni en Hacienda.

Al ser contrainterrogado por el representante del señor Irizarry Cruz, el apelado indicó que era pensionado por el seguro social, ello en una suma de ochocientos dólares ($800.00) mensuales. A su vez, reconoció que la residencia en la que vive no es de su propiedad. Ahora bien, tras ser inquirido, el apelado admitió que prosiguió un trámite para limpiar su récord de antecedentes penales, toda vez que fue convicto y cumplió una probatoria por la comisión de los delitos de agresión agravada y amenazas. De igual forma, admitió que, en el caso sobre explotación financiera que prosiguió en contra de la apelante, se determinó que esta no incurrió en dicha conducta y que las cuentas no estaban alteradas.

El apelado también fue contrainterrogado por la representante legal de la aquí apelante. A sus preguntas, afirmó conocer a la apelante por espacio de quince (15) años y que la veía cada vez que visitaba a su padre. A su vez, expresó que no fue sino hasta hace unos años que radicó una querella en contra de esta al amparo de la Ley 21-2019, *supra.* Igualmente, reconoció que no informó en la petición de tutela el hecho de ser pensionado, ni sus condiciones de salud, así como, también, nuevamente admitió haber cumplido una sentencia en probatoria, la cual, posteriormente, fue eliminada de su récord de antecedentes penales. Del mismo modo, el testigo afirmó que, tras conocer sobre el matrimonio de la apelante y su padre, radicó una acción civil de nulidad matrimonial.

Al ser contrainterrogado por la Procuradora, el apelado indicó que la propiedad en la que reside pertenece a su esposa en su carácter privativo, y que la comparte con esta y con dos (2) menores. El testigo describió la residencia y, a su vez, aclaró que su condición de pensionado respondió a un padecimiento de diabetes. De igual

modo, añadió que toma medicamentos para la ansiedad, que cada tres (3) meses visita un psiquiatra, y que su problema de ansiedad comenzó a raíz de la condición de su padre y de la falta de comunicación entre ambos. El apelado expresó que conocía todo lo relacionado a los negocios y propiedades del señor Irizarry Cruz y que, a su juicio, ello le molestaba a la apelante. Ahora bien, una vez más admitió haber resultado convicto por los delitos antes indicados y sostuvo que se trató de un evento acontecido hace, aproximadamente, veinte (20) años. Al proseguir, el testigo afirmó estar dispuesto a asumir las responsabilidades de la tutela de su padre y sostuvo que la apelante no actuaba de buena fe, que se casó con su padre a sabiendas de que estaba enfermo, y que, a su entender, su padre no se encontraba en condiciones óptimas de salubridad.

La próxima testigo en declarar lo fue la aquí apelante. Según su declaración, está legalmente casada con el señor Irizarry Cruz, de quien es cuidadora. Indicó que actualmente tiene setenta y ocho (78) años y que es la pareja de Irizarry Cruz desde que tenía cincuenta y seis (56) años. Sobre la familia de su esposo, indicó tener cierta comunicación con su hija mayor y negó que impide a sus hijos relacionarse con él. Al inquirírsele sobre las hospitalizaciones de su esposo, la testigo indicó que, en una ocasión, este tuvo una complicación con el apéndice, por lo que tuvo que ser recluido. Indicó que, en dicho momento, también cuidaba a su señora madre, quien estaba en lecho de muerte y, dado a que su vehículo tenía una goma vacía, llamó a la hija mayor de Irizarry Cruz para que lo llevara al hospital mientras arreglaba su carro y buscaba quien la sustituyera con el cuido de su madre. Indicó que, tras llegar al hospital, no la dejaron estar con su esposo, a quien dieron de alta pasados siete (7) días, término en el que no le permitieron estar con él, ni llevarle comida o pertenencias. Al abundar, la testigo expresó

que, luego de que fuera dado de alta, la hija de Irizarry Cruz lo llevó a su casa y le pidió que le firmara un papel. La apelante indicó que, tras negarse, la hija de su esposo intentó agredirla con un puño, razón por la cual la denunció.

Al continuar, la apelante sostuvo que su esposo estuvo estable cerca de cuatro (4) días, y que luego lo hospitalizaron por veintiún (21) días, periodo en el cual lo acompañó y fue sustituida por su hermano en el cuido de su señora madre. Indicó que cuando su madre falleció, su esposo tenía una cita médica con el neurólogo y, a fin de que no la perdiera, les solicitó a sus hijos que la llevaran mientras ella manejaba los trámites del deceso. A su vez, al ser inquirida, indicó que solía vacacionar con su esposo, que han ido a cruceros, viajan juntos y que económicamente se organizan para evitar gastos innecesarios. Expresó que ambos tienen cuentas de bancos y que comparten los gastos de las propiedades y servicios. La apelante indicó que aceptaría ser la tutora de su esposo de manera libre y voluntaria y sin remuneración, y que no existe deuda ni derecho de crédito entre ambos. Igualmente, se reafirmó en que ella es quien siempre está al pendiente del señor Irizarry Cruz, que lo ama, que llevan veinte (20) años juntos y que él está a gusto con ella.

Al ser contrainterrogada por la representante legal del apelado, la testigo indicó que convivió con Irizarry Cruz por espacio de diecisiete (17) años previo a casarse. Sobre dicho particular, afirmó que él fue quien le pidió contraer nupcias e indicó que, no se casaron antes, porque ella entendía que ello conllevaba mucho trámite y, para ese entonces tenía un taller de costura. Especificó que se casaron en el año 2023, luego de que, un año antes, Irizarry Cruz le recordara que tal era el plan entre ambos. La apelante indicó, a su vez, que se encargaba de administrarle los medicamentos a su esposo, y que, poco antes de casarse, su médico

le dijo que este estaba dando indicios del padecimiento de *Alzheimer*. Igualmente, afirmó que la propiedad en la que residen es de ella y de su hermano.

A preguntas de la Procuradora, la testigo respondió que convivió con el señor Irizarry Cruz por diecisiete (17) años y que llevan casados poco más de dos (2). Declaró sobre las remodelaciones de la propiedad, a cuenta de ella y su hermano, así como sobre las cantidades de dinero en las cuentas bancarias de ella y su esposo. Por igual, testificó sobre sus viajes ocasionales con su esposo, ello para visitar a su hija, y afirmó que él se pone contento cada vez que planifican vacacionar. Al proseguir con su contrainterrogatorio, la apelante afirmó que no tenía problema alguno en que los hijos de Irizarry Cruz se relacionaran con él. Indicó que ha intentado entablar comunicación con estos, invitarlos a su casa y relacionarse con ellos, pero estos la evitan. Del mismo modo, se reafirmó en que ella era la mejor candidata para ejercer la tutela de su esposo, porque lleva mucho tiempo con él, lo conoce, se aman, tiene una rutina diaria para cuidarlo y atiende sus necesidades.

La apelante fue recontrainterrogada por la representante del apelado, en cuanto a una ocasión en que lo dejó sentando en un banco en un centro comercial mientras iba al baño. Sobre ello, sostuvo que Irizarry Cruz seguía sus indicaciones y que no corrió ningún peligro.

Surge de la transcripción de los procedimientos que el tribunal encontró probada la incapacidad del señor Irizarry Cruz, por lo que emitió la declaración correspondiente. A su vez, se desprende que la Procuradora indicó que, aunque encontraba a los comparecientes capacitados para ejercer la tutela en disputa, recomendaba que la misma fuera ejercida por la apelante.

Así, luego de evaluada la prueba, el 10 de julio de 2024, el Tribunal de Primera Instancia emitió la *Sentencia* que nos ocupa. Mediante la misma, declaró al señor Irizarry Cruz legalmente incapacitado para regir su persona y para administrar sus bienes. No obstante, sobre la designación del tutor, el foro sentenciador no acogió la recomendación de la Procuradora, y determinó que dicho rol habría de ser compartido entre los aquí comparecientes. A fin de sustentar su conclusión, la Juzgadora indicó que, en vista de la relación familiar tensa y distante entre las partes, resultaba meritorio que el tribunal tomara medidas para ayudar "a unificar la familia en beneficio del incapaz".[3] Añadió que "nombrar un solo tutor no fomentaría la unión, sino, contrario, crearía más división y discordia".[4] De este modo, nombró a la apelante tutora del señor Irizarry Cruz, ello para regir su persona, y al apelado, para administrar sus bienes.

Inconforme, y tras denegada una previa solicitud de reconsideración, el 29 de agosto de 2024, la apelante compareció ante nos mediante el presente recurso de apelación. En el mismo formula los siguientes señalamientos:

> Erró el Tribunal de Primera Instancia, Sala Superior de Ponce, al dictar sentencia en el presente caso sin formular determinaciones de hechos que permitan conocer las premisas fácticas que fundamentaron la decisión de declarar incapaz a José A. Irizarry Cruz y de designarle dos tutores de manera conjunta.

> Erró el Tribunal de Primera Instancia, Sala Superior de Ponce, al designar a dos tutores distintos, uno para que rija su persona y otra para que rija sus bienes, sin que existan razones que apoyen ese proceder y sin que esa decisión esté avalada por la prueba.

> Erró el Tribunal de Primera Instancia, Sala Superior de Ponce, al designar a José Alexis Irizarry Semidey como tutor de José A. Irizarry Cruz a pesar de que el orden de prelación de nuestro ordenamiento prefiere al cónyuge y a pesar de que existen razones que lo inhabilitan para ser tutor.

---

[3] Véase: Apéndice, Anejo 15, *Sentencia*, pág. 109.
[4] *Íd.*

Luego de examinar el expediente de autos y con el beneficio de la comparecencia de ambas partes de epígrafe, y de la transcripción de la vista, procedemos a expresarnos.

**II**

**A**

Nuestro estado de derecho presume la capacidad de la persona natural mayor de edad de obrar por sí misma. En consecuencia, contra esa presunción únicamente se admite una sentencia de incapacitación absoluta o de restricción parcial de la capacidad por las causas y la extensión que expresamente determina la ley. Art. 100, Código Civil del 2020, 31 LPRA sec. 5601. Así, hasta tanto un tribunal competente no emita una declaración oficial de incapacidad, el adulto, o menor emancipado, se presume capaz para todos los efectos legales. *González Hernández v. González Hernández*, 181 DPR 746, 759 (2011); *Rivera y otros v. Bco. Popular,* 152 DPR 140, 157 (2000); *Jiménez v. Jiménez*, 76 DPR 718, 737 (1954). Por tanto, el procedimiento para declarar incapaz y nombrar a un tutor a una persona adulta, se exige que se rebata la presunción de capacidad mental suficiente para obrar, regir su persona y administrar sus bienes. *Íd.*

El ordenamiento civil vigente enumera las causas de incapacitación absoluta que impiden a una persona obrar por sí misma. Así, el Artículo 102 del Código Civil define que serán automáticamente incapaces para obrar por sí mismos los siguientes:

(a) la persona que tiene disminuidas o afectadas permanente y significativamente sus destrezas cognoscitivas o emocionales y tal estado le impide percatarse del contenido y alcance de los actos ordinarios y jurídicos que realiza; y

(b) la persona que padece una condición física o mental que le imposibilita cuidar de sus propios asuntos o intereses, mientras se encuentra en este estado.

31 LPRA sec. 5612.

El proceso de declaración de incapacidad de determinada persona natural puede ser solicitado por su cónyuge, los progenitores, y "en todos los casos, cualquier pariente con plena capacidad de obrar que tenga derecho a sucederle o el defensor judicial que el tribunal designe". 31 LPRA sec. 5631. Igualmente, puede solicitar la declaración de incapacidad el Ministerio Público, entre otras circunstancias, cuando le sea requerido por alguna persona con interés en el bienestar y la seguridad personal del alegado incapaz, si las personas llamadas a hacerlo no inician el procedimiento de manera oportuna, o cuando la persona representa un peligro para su seguridad física o la de otras personas. *Íd.*

El Código Civil regula el procedimiento de declaración de incapacidad, a los fines de que se lleve a cabo mediante un juicio ordinario, luego de cumplirse con las exigencias del debido proceso de ley. 31 LPRA sec. 5634. Sobre la prueba requerida, el Artículo 114 de Código Civil expresamente dispone que, previo a declarar a una persona como incapaz, el tribunal debe recibir "el dictamen de uno o varios facultativos médicos, que traten las condiciones fácticas, cognoscitivas o emocionales que limitan la capacidad de obrar del alegado incapaz". 31 LPRA sec. 5635. El juicio profesional correspondiente habrá de versar sobre las condiciones que lo incapacitan para tomar decisiones informadas sobre su persona y sus bienes, o únicamente sobre sus bienes. *Íd.* Sin embargo, tal no constituye la única evidencia en la que el tribunal debe basar su criterio, toda vez que está legitimado para solicitar y recibir toda prueba que estime necesaria para hacer su determinación. *Íd.* Así, una vez el tribunal concluya que la persona está realmente incapacitada para cuidar de sí misma y administrar sus bienes, entonces procederá al nombramiento de un tutor. *González*

*Hernández v. González Hernández,* supra, pág. 761. De igual forma, "adoptará las medidas cautelares necesarias para la seguridad de la persona y de los bienes del alegado incapaz hasta que se dicte la sentencia". 31 LPRA sec. 5641.

**B**

Por su parte, el estado de derecho reconoce la *tutela* como uno de los medios supletorios para subsanar la falta de capacidad mental. *Rivera y otros v. Bco. Popular,* supra, pág. 157. A esos efectos, el Artículo 122 del Código Civil, reza:

> La tutela confiere a una persona natural o jurídica la autoridad para representar y asistir a otra que, sin estar sujeta a la patria potestad, tiene restringida la capacidad de obrar por razón de su minoridad o por las causas que declara la ley.
>
> La tutela tiene por objeto la guarda y la representación de la persona incapaz y la administración de sus bienes, o solamente la administración de los bienes, según las limitaciones que determina la sentencia y las exigencias del régimen tutelar al que queda sometida.
>
> Las funciones tutelares constituyen un deber, se ejercen en beneficio del tutelado y están bajo la salvaguarda de la autoridad judicial.
>
> 31 LPRA sec. 5661.

Están sometidas a la tutela la persona mayor de edad cuya capacidad de obrar está restringida por sentencia de incapacitación debido a las causas que se mencionan en el Código Civil. 31 LPRA sec. 5662. La adjudicación de la tutela puede efectuarse vía testamento, por escritura pública o mediante disposición de ley. 31 LPRA sec. 5664. Ahora bien, "[e]n todo caso, el tribunal evaluará la idoneidad del tutor seleccionado por las personas legitimadas para ello, así como el alcance de su gestión respecto de la persona y de los bienes del tutelado, antes de que comience a ejercer el cargo". *Íd.* En este contexto particular, el Artículo 134 del Código Civil, establece una prelación en el orden de las personas llamadas a

ejercer la tutela respecto a un incapaz mayor de edad. Específicamente, dispone como sigue:

> (a) al cónyuge, siempre que convivan y conserven la relación marital a la fecha de la declaración;
>
> (b) a cualquiera de los progenitores, si los hijos del incapaz son menores de edad;
>
> (c) a cualquiera de los hijos;
>
> (d) a cualquiera de los abuelos;
>
> (e) a cualquiera de los hermanos;
>
> (f) a cualquier persona natural idónea, relacionada por lazos afectivos o solidarios con el incapaz, que quiera y pueda asumir responsablemente el cargo; o
>
> (g) a cualquier persona jurídica dedicada a este ejercicio tutelar.
>
> La designación se hace de acuerdo al interés óptimo del incapaz.
>
> 31 LPRA sec. 5683

En ocasión a que dos (2) o más personas concurran al referido llamamiento, ello en el mismo orden de prelación, el ordenamiento civil dispone que el tribunal habrá de hacer la designación correspondiente, todo en consideración al óptimo interés del tutelado, "a menos que sea conveniente que compartan simultáneamente el cargo". 31 LPRA sec. 5684.

Igualmente, de la misma forma en la que el Código Civil consigna las personas idóneas a asumir la tutela de un incapaz mayor de edad, también provee las exclusiones aplicables al ejercicio de dicho cargo. En este sentido, el Artículo 144 del Código Civil, dispone que no podrán ser tutores:

> (a) la persona que está privada o suspendida del ejercicio de la patria potestad por resolución judicial;
>
> (b) la persona que ha sido privada de una tutela anterior por las causas que dispone la ley o la persona que está sujeta a ella;

(c) la persona sentenciada a cualquier pena privativa de libertad, mientras está cumpliendo la sentencia;

(d) la persona convicta por delito grave o menos grave que implica depravación moral o que exhibe conducta que hace suponer fundadamente que no desempeñará bien la tutela;

(e) la persona que tiene conflicto de interés con el menor o el incapaz, mantiene un pleito o acción sobre el estado civil del menor o el incapaz o sobre la titularidad de sus bienes o le adeuda sumas de consideración;

(f) la persona quebrada no rehabilitada, salvo que la tutela sea de la persona;

(g) la persona que ha presentado maliciosa e injustificadamente alguna querella contra el menor o acusación criminal contra sus ascendientes o colaterales hasta el cuarto grado;

(h) la persona que no reside en Puerto Rico, a menos que al momento del nombramiento tenga al menor o al incapaz en su compañía o se trate de la tutela de bienes ubicados fuera del territorio o que pueden administrarse desde cualquier lugar; y

(i) la persona excluida expresamente por los progenitores en testamento o escritura pública, salvo que el tribunal lo estime conveniente, en beneficio del menor o del incapaz.

31 LPRA sec. 5702.

### C

Finalmente, "la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada [...]". *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 778 (2022); *Gómez Márquez et al. v. El Oriental,* 203 DPR 783, 792 (2020), citando a *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013). De ahí que las determinaciones de credibilidad que realiza el tribunal primario están revestidas de una presunción de corrección, razón por la cual, en este aspecto, gozan de un amplio margen de deferencia por parte

del foro intermedio. *Barreto Nieves et al. v. East Coast,* 2024 TSPR 40, 213 DPR ___ (2024); *Dávila Nieves v. Meléndez Marín,* supra. Asimismo, como norma, un tribunal apelativo está impedido de sustituir o descartar, por sus propias apreciaciones, las determinaciones de hechos que realiza el foro sentenciador, fundamentando su proceder en un examen del expediente sometido a su escrutinio. *Íd.*

De ordinario, el Tribunal de Primera Instancia es quien está en mejor posición para aquilatar la prueba testifical que ante sí se presentare, puesto que es quien oye y observa declarar a los testigos. *Pueblo v. Negrón Ramírez,* 2024 TSPR 41, 213 DPR ___ (2024); *Barreto Nieves et al. v. East Coast,* supra; *Ortiz Ortiz v. Medtronic,* supra, págs. 778-779*; Gómez Márquez et al. v. El Oriental,* supra, pág. 792; *López v. Dr. Cañizares,* 163 DPR 119, 136 (2004). El juzgador de hechos goza de preeminencia al poder apreciar sus gestos, contradicciones, manierismos, dudas y vacilaciones, oportunidad que le permite formar en su conciencia la convicción de si dicen, o no, la verdad.  Ahora bien, la normativa antes expuesta no es de carácter absoluto. Si bien el arbitrio del foro primario es respetable, sus dictámenes están sujetos a que los mismos se emitan conforme a los principios de legalidad y justicia. *Méndez v. Morales*, 142 DPR 26, 36 (1996).  Al amparo de ello, el ordenamiento jurídico vigente dicta que el criterio de deferencia antes aludido cede, entre otras instancias, cuando se determina que el juzgador de hechos incurrió en pasión, prejuicio, parcialidad o error manifiesto. *Pueblo v. Negrón Ramírez,* pág. 19; *Gómez Márquez et al. v. El Oriental,* supra, pág. 793; *SLG Rodríguez v. Nationwide,* 156 DPR 614, 623 (2002).  En este contexto, la doctrina reconoce que, ante una alegación de pasión, prejuicio o parcialidad, el foro intermedio viene llamado a auscultar si, en efecto, el tribunal primario cumplió con adjudicar la

controversia de que trate de manera imparcial, todo en la consecución de la misión de impartir justicia. "La pasión, el prejuicio o la parcialidad que puede dar base a revocar un dictamen, no surge necesariamente de algún conflicto previo entre el adjudicador y una de las partes, sino que tiende a manifestarse durante el proceso mismo". *Íd.,* pág. 793. Por su parte, incurre en error manifiesto el tribunal de hechos, cuando sus conclusiones "están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Íd.* Así pues, el error atribuido al ejercicio del tribunal primario debe establecer que, en la gestión de apreciar la prueba sometida ante sí, este se distanció de la realidad fáctica o descansó "exclusivamente en una parte de la prueba, mientras hubo otra [...] que la contradijera". *Íd.*

### III

En la presente causa, la apelante plantea que el Tribunal de Primera Instancia erró al declarar la incapacidad del señor Irizarry Cruz y designarle dos (2) tutores, ello sin, alegadamente, formular determinaciones de hechos suficientes para sustentar su conclusión. A su vez, aduce que el foro primario incidió al establecer que los tutores designados, de manera independiente, regirán, uno, la administración de sus bienes y, la otra, la de su persona, todo sin que concurrieran razones fácticas debidamente evidenciadas para sustentar la legitimidad de dicha determinación. Del mismo modo, en su recurso, la apelante sostiene que el tribunal sentenciador incurrió en error al designar al apelado como tutor de su esposo, ello contrario al orden de prelación establecido en el ordenamiento civil y a pesar de que este se encuentra inhabilitado por ley para ostentar el cargo en controversia. Habiendo examinado los referidos señalamientos a la luz del derecho aplicable y de los hechos establecidos, modificamos la *Sentencia* apelada.

Un examen de los documentos que componen el expediente de autos, particularmente de la transcripción de los procedimientos orales en el tribunal primario, mueve nuestro criterio a concluir que el Tribunal de Primera Instancia incurrió en error de derecho al designar al aquí apelado como tutor del señor Irizarry Cruz. Los fundamentos que el foro primario expuso para apoyar dicha determinación se apartan de los requisitos legales que el estado de derecho impone en la consideración de una petición de tutela legal, toda vez que responden a razones subjetivas no enmarcadas en la norma. Es por ello que, a nuestro juicio, dicha designación debe ser dejada sin efecto.

En principio, destacamos que, la declaración de incapacidad del señor Irizarry Cruz quedó debidamente establecida por la prueba. El testimonio del doctor Michel Terrero fue suficiente a los efectos de establecer que la condición actual de Irizarry Cruz limita sus capacidades físicas y cognitivas, hecho que le impide valerse por sí mismo. El galeno describió sus impresiones médicas respecto al paciente, y detalló la progresión de su condición en cada una de las visitas médicas en las que lo evaluó. De igual forma, el doctor Michel Terrero fue enfático en la corrección de su diagnóstico incapacitante, en las repercusiones que cualquier cambio de entorno pudieran tener en el señor Irizarry Cruz, y en el retroceso que este mostraba cita tras cita. Por tanto, ante ello, no podemos sino sostener lo resuelto por el Tribunal de Primera Instancia, ello en cuanto a la declaración de incapacidad del señor Irizarry Cruz. La prueba sostiene que este carece de la aptitud requerida para velar por su persona y sus bienes, hecho que necesariamente requiere que su capacidad sea suplida mediante la figura de la tutela.

Ahora bien, diferimos del tribunal primario en cuanto a la necesidad del nombramiento conjunto de tutores que efectuó respecto al señor Irizarry Cruz, y sobre la designación del apelado

como tal. Coincidimos con la apelante con que, en este aspecto, nada en la *Sentencia* permite entrever las razones fácticas y legales que apoyan la procedencia de su conclusión. Mas bien, conforme indicáramos, dichas determinaciones se apartan de la norma general en la que está predicada la designación de una tutela legal a una persona incapaz. Nos explicamos.

En principio, según lo esbozado en nuestra previa exposición doctrinal, como norma general, el ordenamiento jurídico dispone que la tutela sobre un incapaz mayor de edad, habrá de ser ejercida por una sola persona, salvo, por excepción, se hagan presentes circunstancias especiales que tornen conveniente el que las facultades propias a dicho cargo sean compartidas por dos (2) o más personas. Para ello, el estado de derecho establece, tanto las condiciones a ser consideradas, como, también, las responsabilidades que, de manera independiente, se pueden ejercer. Sin embargo, en todo caso, se hace preciso probar que los mejores intereses de un mayor de edad incapaz están condicionados a una tutela conjunta. En defecto de ello, prevalece el llamamiento de una sola persona para ejercer la tutela en cuanto a los bienes y la persona de un incapaz judicialmente declarado.

En el presente caso, nada en el dictamen, ni en la prueba desfilada, permite concluir la conveniencia de la designación dual de tutores a favor del señor Irizarry Cruz para que rijan, respectivamente, su persona y sus bienes. Lejos de ello, la evidencia sometida al tribunal acredita una patente brecha en la comunicación entre la apelante y el apelado, que, ciertamente, puede incidir, tanto en la idoneidad de la ejecución de sus respectivas funciones tutelares sobre el señor Irizarry Cruz, como en la efectiva protección de sus bienes y persona. Sin embargo, aun así, tal realidad entre las partes constituyó el fundamento en el que se apoyó el tribunal primario para designar al

apelado y a la apelante como tutores legales de Irizarry Cruz. Según surge expresamente en la *Sentencia*, el tribunal efectuó la designación tutelar conjunta en disputa, ello, con miras a lograr "unificar a la familia en beneficio del incapaz".[5] No obstante, la unificación familiar no era el proceso que se sometió al escrutinio judicial, ni ello constituye criterio legal a considerarse en la designación de un tutor legal a un mayor de edad incapaz. Por tanto, al ampararse en un aspecto ajeno a lo expresamente dispuesto por el estado de derecho, el tribunal de instancia erró.

Tal cual expone la apelante en su recurso, nuestro ordenamiento jurídico impone una prelación entre las personas sujetas al ejercicio de la tutela, por lo que, habiéndose resuelto que el señor Irizarry Cruz estaba inhabilitado para regir su persona y sus bienes, el foro de origen estaba llamado a acudir al listado pertinente. En este sentido particular, y ante la concurrencia de dos personas que solicitaron ejercer el cargo en controversia, el Artículo 134 del Código Civil, *supra,* confiere al cónyuge del incapaz, el primer lugar en el orden establecido para fungir como su tutor legal. En el caso de autos, la prueba estableció que la apelante es la esposa legítima de Irizarry Cruz, ha sido su compañera consensual por más de diecisiete (17) años, y ha sido la persona que en todo ese tiempo ha asumido la responsabilidad de su cuidado. Siendo así, es a esta a quien, en estricto derecho, y en ausencia de consideraciones excepcionales que acrediten la necesidad del nombramiento de una tutela conjunta, se le debió haber adjudicado dicho cargo respecto a su señor esposo.

Ahora bien, lo anterior no constituye el único fundamento legal que suprime la legalidad y la corrección del dictamen aquí apelado. El ordenamiento jurídico no solo impone una prelación en

---

[5] Véase: Apéndice, Anejo 15, *Sentencia,* pág. 109.

la designación de un tutor en caso de una declaración de incapacidad. La norma, a su vez, detalla las causas por las cuales una persona con potencial de ser tutor puede ser excluida de la consideración correspondiente. Al respecto, el Artículo 144 del Código Civil, *supra,* dispone que toda persona convicta por delito grave, o menos grave, no puede ejercer tal cargo. En vista de ello, por la sola aplicación del derecho pertinente a la controversia, el Tribunal de Primera Instancia estaba impedido de designar al apelado como tutor de los bienes del señor Irizarry Cruz. De la prueba de autos se desprende que, por la comisión de delitos graves, el apelado cumplió una sentencia en probatoria. Al remitirnos al testimonio del apelado en el juicio, surge que este expresamente admitió su convicción. Ello debió haber movido el criterio del tribunal primario a, automáticamente, descalificar al apelado como posible tutor de su señor padre. Así pues, ante la referida convicción, la Juzgadora estaba impedida de recurrir a aspectos no pertinentes a la cualificación debida de un tutor, para concederle a este un cargo que, en estricto derecho, no podía ejercer.

En mérito de lo antes expuesto, modificamos el pronunciamiento apelado, para dejar sin efecto la designación del apelado como tutor de los bienes del señor Irizarry Cruz. La misma es contraria a derecho, por lo que resulta necesario suprimir su efectividad. De este modo, prevalece la determinación de incapacidad resuelta en cuanto el señor Irizarry Cruz, así como la designación de la apelante como su tutora legal, tanto para velar su persona, como sus bienes. En cuanto a este particular, destacamos que la apelante no solo cumple con todas las exigencias de ley establecidas, sino que, la prueba demostró que, por años, ha velado con diligencia por el cuidado de su esposo y fue expresamente recomendada por la Procuradora de Familia para ejercer su tutela.

## IV

Por los fundamentos que anteceden, se modifica la *Sentencia* apelada, solo a fin de dejar sin efecto la designación del apelado como tutor de los bienes de su padre, el señor Irizarry Cruz. Por lo demás, se confirma el dictamen en toda su extensión.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones