Luz Méndez de Rodríguez, demandante y recurrida, *v.* Gladys Morales Molina y otros, demandandos y recurrentes.

Número: RE-94-514          Resuelto: 15 de noviembre de 1996

*Eduardo M. Joglar*, abogado de la parte recurrente; *Ramón Rivera Iturbe*, abogado de la parte recurrida.

PER CURIAM: Acuden ante nos Gladys Morales Molina y sus padres, Dionisio Morales Ayala y Ramona Molina Romero, para solicitar la revisión de la sentencia emitida por el entonces Tribunal Superior de Puerto Rico, Sala de San Juan, que declaró con lugar la demanda para el cobro de honorarios de abogado presentada por la Lcda. Luz Méndez de Rodríguez contra ellos, por los servicios prestados en la preparación de una petición de declaratoria de herederos y una planilla del caudal relicto. En la sentencia el tribunal de instancia concluyó que existía un acuerdo de pagarle a la abogada el quince por ciento (15%) del valor del caudal relicto, el cual calculó incluyendo el monto de dos (2) pólizas de seguro de vida. De este modo, ordenó el pago de cincuenta y ocho mil quinientos dólares ($58,500) más mil quinientos dólares ($1,500) en concepto de honorarios a favor de la abogada, siendo el valor del caudal cincuenta mil novecientos treinta y siete dólares con ochenta y dos centavos ($50,937.82), excluidas las pólizas. Por entender que el Tribunal Superior cometió un error manifiesto en su apreciación de la prueba, revocamos.

I

María Morales Molina falleció intestada sin dejar descendientes. Le sobrevivieron sus padres, aquí recurrentes, Dionisio Morales Ayala y Ramona Molina Romero, quienes se convirtieron en sus únicos y universales herederos. Al momento de su fallecimiento María Morales tenía una participación de un cincuenta por ciento (50%) en la Sociedad High Technology & Associates (en adelante High Technology). Además, poseía dos (2) pólizas de seguro de vida por la cantidad total de trescientos mil dólares ($300,000), en las cuales se designaba como beneficiaria a su hermana Gladys Morales Molina, quien, a su vez, po-

seía el otro cincuenta por ciento (50%) de la participación en High Technology.

La licenciada Méndez fue contratada por Dionisio Morales y Ramona Molina para la preparación de la petición de declaratoria de herederos y planilla del caudal relicto de su hija fallecida. Surgió una disputa entre las partes cuando la licenciada Méndez le indicó a Gladys Morales que por el trabajo de la declaratoria de herederos y la planilla del caudal relicto de su hermana, sus padres le adeudaban siete mil seiscientos doce dólares con veintinueve centavos ($7,612.29), y ella veintisiete mil dólares ($27,000). Los recurrentes impugnaron la factura y le hicieron una oferta de transacción y pago a la licenciada Méndez. La recurrida no contestó la oferta, sin embargo, se negó a entregar el expediente a sus clientes, hasta tanto le pagaran.

Ante esta situación, Dionisio Morales y Ramona Molina presentaron una querella ante el Colegio de Abogados de Puerto Rico. Dicha entidad le ordenó a la licenciada Méndez entregarle el expediente a los recurrentes. Luego de esta orden la recurrida Méndez envió una segunda factura ascendente a cincuenta y ocho mil quinientos dólares ($58,500). A los seis (6) días del envío de dicha factura, instó una acción para el cobro de dinero contra los recurrentes. Por su parte, Dionisio Morales y Ramona Molina instaron una reconvención para reclamar los gastos incurridos al llevar la querella ante el Colegio de Abogados y solicitar una indemnización por los daños ocasionados por la dilación injustificada en devolver el expediente y por el hostigamiento a que fueron sometidos por parte de la licenciada Méndez.

Luego de otros incidentes procesales, las partes acordaron en la vista con antelación al juicio que no existía controversia alguna sobre la prestación de servicios, sino que la controversia radicaba en torno a la cuantía que se estaba cobrando. En el juicio en su fondo declararon por la

parte recurrida: la licenciada Méndez, el Lcdo. Ángel Rodríguez Cardona, esposo de la recurrida, y Edilberto Rodríguez Guzmán, sobrino político de la recurrida y yerno de Dionisio Morales.

Según surge de la Exposición Narrativa de la Prueba (en adelante E.N.P.), en el juicio en su fondo la licenciada Méndez testificó que los recurrentes la contrataron para que les hiciera las gestiones pertinentes sobre la herencia de María Morales y la liquidación de High Technology. Esto incluía la declaratoria de herederos y la planilla de contribución sobre el caudal relicto. Su sobrino político, Edilberto Rodríguez, quien es yerno de Dionisio Morales, fue quien llevó a este último a su casa. En esa primera reunión le indicó a Dionisio Morales que cobraría el 15% del valor del caudal relicto. Declaró que en una conversación posterior con Edilberto Rodríguez, le manifestó que estaba preocupada porque no había hecho un contrato por escrito, ya que en ese tipo de caso acostumbraba cobrar el 15%.

En cuanto a Gladys Morales, declaró que ésta estuvo de acuerdo con los honorarios facturados y le pidió que hiciera las gestiones con las compañías de seguro para que le pagaran las pólizas de vida. Al ella informar a cuánto ascendían sus honorarios, Gladys Morales le pidió que lo pusiera por escrito, lo que en efecto hizo. De nuevo le escribió a las compañías de seguro para solicitarles que hicieran el cheque de los beneficios de la póliza a nombre de ella y de Gladys Morales. Las aseguradoras le indicaron que sólo podían hacer el cheque a nombre de la beneficiaria. Añadió que tenía que incluir las pólizas de seguro que dejó la causante en la planilla del caudal relicto.[1]

Por su parte, el Lcdo. Ángel Rodríguez Cardona, esposo de la licenciada Méndez, declaró que su esposa pactó con Dionisio Morales el cobro del 15% del caudal relicto. Indicó,

---

[1] El Tribunal de Primera Instancia no permitió que se contrainterrogara a la Lcda. Luz Méndez de Rodríguez sobre sus obligaciones bajo el Código de Ética Profesional ni sobre el tiempo dedicado a sus tareas para aplicar la doctrina *quantum meruit*.

sin embargo, que no sabía si en la primera reunión entre las partes hablaron de honorarios.

Edilberto Rodríguez testificó que presta servicios profesionales de contabilidad a High Technology. Indicó que fue él quien le recomendó a sus suegros acudir adonde la licenciada Méndez. En la segunda reunión entre las partes "no oyó cuánto se iba a cobrar". E.N.P., pág. 6. Indicó que posteriormente la licenciada Méndez le expresó su preocupación debido a que no había hecho un contrato escrito con Dionisio Morales y su esposa, y que ella usualmente cobraba el 15% del caudal relicto. Él le contestó que no había necesidad de un contrato escrito por la relación de familia.

Por la parte recurrente testificaron Dionisio Morales y su hija Gladys Morales Molina. El primero testificó que conoce a la licenciada Méndez hace más de treinta (30) años, pero que nunca había utilizado sus servicios como abogada ya que siempre recurría a amistades que ni le facturaban por los servicios legales, aunque él siempre les pagaba. Testificó que en su primera reunión con la licenciada Méndez le preguntó que cuánto iban a ser los honorarios, a lo que ella respondió "que no se preocupara que eso estaba en familia". En dos (2) ocasiones posteriores, cuando fue a firmar la petición de declaratoria de herederos y cuando fue a firmar la planilla del caudal relicto, le preguntó a la licenciada Méndez cuánto serían sus honorarios, a lo que ella le daba la misma respuesta de antes: que no se preocupara que estaban entre familia. Expresó que él nunca pensó que no le cobraría pero creía que sería como cuatrocientos dólares ($400), ya que esa cantidad fue la que un abogado le indicó que sería lo que le podrían cobrar.

Gladys Morales testificó que nunca había contratado los servicios legales de la licenciada Méndez, ya que ella tiene sus abogados personales y asumió que sus padres la habían contratado. En una ocasión, la licenciada Méndez le preguntó por las pólizas de seguro de la causante y quiénes eran los beneficiarios. Al ella contestarle que era la única

beneficiaria, la licenciada Méndez le indicó que necesitaba el original de las pólizas para confirmar que los beneficiarios no eran herederos. Sin su autorización, la licenciada Méndez escribió a las compañías de seguro para que hicieran los cheques a nombre de ella y de la licenciada Méndez y su esposo. Posteriormente, la licenciada Méndez se negó a entregarle el expediente a sus padres por lo que tuvieron que contratar representación legal. Señaló que ella hizo las gestiones para conseguir la resolución de declaratoria de herederos y el relevo contributivo del Departamento de Hacienda porque la licenciada Méndez nunca se los entregó a sus padres.

El tribunal de instancia no permitió a la parte recurrente pasar la prueba en apoyo de su reconvención. Dictó una sentencia en la cual declaró con lugar la demanda para el cobro de dinero en concepto de honorarios por la suma de cincuenta y ocho mil quinientos dólares ($58,500), más mil quinientos dólares ($1,500) en concepto de honorarios de abogado; desestimó a su vez la reconvención de los recurrentes basándose exclusivamente en lo resuelto por este Tribunal en *Commonwealth Loan Corp. v. García*, 96 D.P.R. 773 (1968). Inconformes con la sentencia, Dionisio Morales, su esposa Ramona Molina y su hija Gladys Morales recurren ante nos.

En su escrito plantean la comisión de los errores siguientes por parte del tribunal de instancia: (1) error al decretar como justos y razonables los honorarios reclamados por la licenciada Méndez ascendentes a cincuenta y ocho mil quinientos dólares ($58,500), por la preparación de la petición de declaratoria de herederos y la planilla de caudal relicto, sobre un caudal relicto neto de cincuenta mil novicientos treinta y siete dólares con ochenta y dos centavos ($50,937.82); (2) al decretar la existencia de un contrato de servicios profesionales entre la licenciada Méndez y Gladys Morales, así como la imposición de cuarenta y cinco mil dólares ($45,000) por honorarios en virtud del

alegado contrato, y al imponerle honorarios a Gladys Morales como si fuera parte de la sucesión de la causante; (3) al no decretar la nulidad radical de cualquier contrato de servicios profesionales entre la licenciada Méndez y Gladys Morales, pues de haber existido es contrario a la ley, la moral y el orden público, y (4) al desestimar la reconvención de los recurrentes y violar así el debido procedimiento de ley.

Los señalamientos de error uno (1) al tres (3) guardan una estrecha relación entre sí, por lo que los discutiremos en conjunto. Estos errores giran en torno a la figura del contrato de servicios profesionales. Resulta necesario examinar en detalle este tipo de contrato, tomando en consideración sus requisitos y su naturaleza. Posteriormente analizaremos el cuarto señalamiento de error referente a la desestimación de la reconvención instada por los recurrentes contra la licenciada Méndez.

## II

■ El contrato de servicios profesionales de un abogado es, por regla general, un contrato de arrendamiento de servicios. Art. 1473 del Código Civil, 31 L.P.R.A. sec. 4111. Sin embargo, debido al elemento ético del cual está revestido, lo hemos descrito como un contrato sui géneris. *Pérez v. Col. Cirujanos Dentistas de P.R.*, 131 D.P.R. 545 (1992); *Nassar Rizek v. Hernández*, 123 D.P.R. 360, 369 (1989).

■ Por su parte, el Canon 24 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, establece los factores que han de ser tomados en consideración al fijar los honorarios: el tiempo y trabajo requeridos; la novedad y dificultad de las cuestiones implicadas; la habilidad que requiere conducir el caso propiamente; los honorarios que se acostumbran cobrar en el distrito judicial por servicios similares; la cuantía envuelta; la contingencia o certeza de la compen-

sación, y la naturaleza de la gestión profesional si es puramente casual o para un cliente constante, entre otras.

Se establece, en lo pertinente, en el referido canon lo siguiente: "Es deseable que se llegue a un acuerdo sobre los honorarios a ser cobrados por el abogado *al inicio de la relación profesional* y que dicho acuerdo *sea reducido a escrito.*" (Énfasis suplido.) 4 L.P.R.A. Ap. IX. Precisamente, para evitar las controversias con los clientes sobre la compensación por los servicios prestados es que hemos enfatizado la deseabilidad de que el acuerdo sea por escrito. *In re Castro Mesa et al.*, 131 D.P.R. 1037 (1992); *Ramírez, Segal & Látimer v. Rojo Rigual*, 123 D.P.R. 161, 171 (1989). Debe quedar claro que los contratos verbales no están prohibidos pero tienen mayores riesgos de crear fricciones y malentendidos, cuando tanto el cliente como el abogado nieguen lo pactado o lo alteren. Véase *Nassar Rizek v. Hernández*, supra, págs. 372–373.

En el caso de autos la recurrida alega que pactó con Dionisio Morales y Ramona Molina que cobraría el 15% del valor del caudal relicto, hecho que niegan estos últimos. Este alegado acuerdo es de contingencia, pues de antemano la abogada no sabía a cuánto ascendía el caudal y dependiendo de cuánto totalizara sería la cantidad de dinero que cobraría. De este modo, resulta necesario revisar la figura de los honorarios contingentes.

Los honorarios contingentes no están reñidos con la ética, siempre y cuando el cliente los prefiera y el abogado le haya explicado con claridad sus consecuencias. *Pérez v. Col. Cirujanos Dentistas de P.R.*, supra; *Ramírez, Segal & Látimer v. Rojo Rigual*, supra; *López de Victoria v. Rodríguez*, 113 D.P.R. 265, 268–269 (1982); Canon 24 del Código de Ética Profesional, *supra.* Sin embargo, para minimizar el riesgo de que surjan controversias futuras entre un abogado y su cliente, hemos recomendado que cuando se pacten honorarios de abogado contingentes se consignen en el contrato escrito las contingencias previsibles que pu-

dieran ocurrir en el pleito. *Ramírez, Segal & Látimer v. Rojo Rigual*, supra, pág. 172.

■ En el caso *López de Victoria v. Rodríguez*, supra, pág. 270, expresamos en el contexto del pacto de honorarios contingentes:

> Como en cualquier otro contrato, la excesiva onerosidad que alcance dimensiones de mala fe, que niegue aquellas normas de conducta colectiva que han de ser observadas por toda conciencia honrada y leal, ... justificaría la intervención moderadora del tribunal. (Citas omitidas.)

■ Los honorarios contingentes están prohibidos en la esfera criminal y en los casos de divorcio. Por otra parte, las Reglas Modelo de Conducta Profesional de la American Bar Association reconocen el uso válido de los honorarios contingentes en casos no contenciosos, pero se enfatiza que serían irrazonables en todo tipo de caso en que la cantidad de trabajo realizada por el abogado sea relativamente pequeña o en casos en que no esté implicado un asunto complejo o la posibilidad de no obtener una sentencia favorable. A.B.A., *Annotated Model Rules of Profesional Conduct 2d* (1992).

■ Cabe señalar que en ausencia de un pacto expreso sobre la cuantía que debe ser cobrada por los servicios profesionales aplica el Art. 1473 del Código Civil, *supra*, el cual establece, en lo pertinente:

> ...En cuanto a los servicios profesionales, se estará, para la remuneración de los mismos, a lo convenido entre las partes; cuando no hubiere convenio y surgieren diferencias, la parte con derecho a la remuneración podrá reclamar y obtener en juicio de la otra parte, ... el importe razonable de dichos servicios.

Queda plasmado en este artículo el principio *quantum meruit* (tanto como se merece), el cual establece el derecho a reclamar el valor razonable de los servicios prestados. *Pérez v. Col. Cirujanos Dentistas de P.R.*, supra.

III

■ Al analizar los señalamientos de error de los recurrentes resulta imperioso revisar las determinaciones de hecho del tribunal de instancia. Reiteradamente hemos establecido que no intervendremos con la apreciación de la prueba realizada por el tribunal de instancia en ausencia de pasión, prejuicio o error manifiesto. *Benítez Guzmán v. García Merced*, 126 D.P.R. 302 (1990); *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8, 14 (1987); *Valencia, Ex parte*, 116 D.P.R. 909, 912 (1986); *Rodríguez Cancel v. A.E.E.*, 116 D.P.R. 443, 451 (1985); Regla 43.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

■ Sin embargo, aunque el arbitrio del juzgador de los hechos es respetable y merece deferencia, no es absoluto y "una 'apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal' ". *Rivera Pérez v. Cruz Corchado*, supra, pág. 14, citando a *Vda. de Morales v. De Jesús Toro*, 107 D.P.R. 826, 829 (1978). Por ello, aunque haya evidencia que sostenga las conclusiones de hecho del tribunal, si de un análisis de la totalidad de la evidencia este Tribunal queda convencido de que se cometió un error, como cuando las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, las consideraremos claramente erróneas. *Abudo Servera v. A.T.P.R.*, 105 D.P.R. 728, 731 (1977).

En el caso de autos las partes reconocen que pactaron un contrato de servicios profesionales. Sin embargo, hay discrepancia en torno a las prestaciones; es decir, la cuantía que deberá ser pagada por los servicios profesionales prestados. Luego de un cuidadoso examen de la E.N.P., concluimos que el tribunal de instancia cometió un error manifiesto en su apreciación de la prueba y en las determinaciones de hecho formuladas. Éstas no representan el ba-

lance más justiciero de la totalidad de la evidencia recibida.

El tribunal de instancia descansa exclusivamente en el testimonio de la licenciada Méndez para concluir que se pactó el pago del 15% del caudal relicto. Sin embargo, Dionisio Morales testificó que ante su pregunta de cuánto cobraría la licenciada Méndez le contestó "que no se preocupara, que eso estaba en familia". Edilberto Rodríguez, testigo de la licenciada Méndez, testificó que en la reunión inicial entre las partes no escuchó que se hablara de los honorarios y que, posteriormente, la propia licenciada Méndez le indicó que estaba preocupada porque no se había hecho un contrato por escrito, ya que ella acostumbraba a cobrar el 15% en ese tipo de caso.

La licenciada Méndez, profesional con veintisiete (27) años de experiencia a la fecha de los hechos de autos, debía tener conocimiento de nuestras expresiones en torno a que son válidos los honorarios contingentes y no están reñidos con la ética, siempre y cuando el cliente los prefiera y el abogado le haya explicado con claridad sus consecuencias. En ningún momento la licenciada Méndez le dijo a Dionisio Morales cuánto cobraría, ni mucho menos que le cobraría por contingencia, ni le explicó con claridad las consecuencias de ese supuesto acuerdo.

De la totalidad de la prueba presentada resulta ineludible concluir que no existió un acuerdo entre las partes sobre los honorarios que serían cobrados.(2) Incidió el tribunal de instancia al concluir que las partes habían acordado retribuir el trabajo de la licenciada Méndez a razón del 15% del caudal relicto. Ante la prueba desfilada en instancia surge que, al no existir pacto expreso sobre la cuantía que habría de ser cobrada, la licenciada Méndez tiene derecho a ser compensada a base del valor razonable de los

---

(2) Al resolver que no existió un acuerdo de honorarios contingentes no tenemos por qué expresarnos sobre la validez de éstos en casos de peticiones de declaratoria de herederos y preparación de planillas del caudal relicto.

servicios prestados, conforme al Art. 1473 del Código Civil, *supra.*

La suma de cincuenta y ocho mil quinientos dólares ($58,500), que fue facturada por la licenciada Méndez, no está apoyada por la cantidad de trabajo que realizó. Sus gestiones consistieron en lo siguiente: la preparación y presentación de la petición de la declaratoria de herederos que consistía de dos (2) páginas de tamaño legal; una preparación de la planilla del caudal relicto, la cual consta de dos (2) páginas en papel de carta por ambos lados. Para esto realizó un inventario del activo y pasivo con información mayormente suministrada por Dionisio Morales, Ramona Molina, Gladys Morales y Edilberto Rodríguez, quien como contador de High Technology preparó los estados financieros y le proporcionó toda la información contributiva utilizada en la preparación de la planilla del caudal relicto.

El monto del caudal relicto bruto, excluyendo las pólizas de seguro de vida, ascendía a noventa mil ciento ochenta y nueve dólares con dieciséis centavos ($90,189.16) y el neto a cincuenta mil novecientos treinta y siete dólares con ochenta y dos centavos ($50,937.82). De esta manera, la licenciada Méndez pretendía cobrar cincuenta y ocho mil quinientos dólares ($58,500) por un caudal relicto neto ascendente a cincuenta mil novecientos treinta y siete dólares con ochenta y dos centavos ($50,937.82). Recordemos que "[e]l abogado no debe estimar sus consejos y servicios en más ni en menos de lo que realmente valen". 4 L.P.R.A. Ap. IX. Además, cabe indicar que luego de todos estos trámites, la licenciada Méndez no le entregó a sus clientes, ni la resolución judicial para aprobar la declaratoria de herederos ni el relevo contributivo del Departamento de Hacienda.

En cuanto a Gladys Morales, no se presentó prueba de contrato alguno, ni escrito ni verbal, entre la licenciada Méndez y la primera. Gladys Morales no era parte de la sucesión de su hermana fallecida, ni autorizó a la licen-

ciada Méndez a enviarle cartas a las aseguradoras para cobrar el importe de trescientos mil dólares ($300,000). Hemos resuelto, y reiteramos, que la cuantía de las pólizas de seguro de vida no forma parte del caudal relicto. *Pilot Life Ins. Co. v. Crespo Martínez*, 136 D.P.R. 624 (1994); *Fernández Vda. de Alonso v. Cruz Batiz*, 128 D.P.R. 493 (1991).[3] Cabe indicar que resulta inquietante que la licenciada Méndez le hubiera solicitado a las aseguradoras que hicieran los cheques a nombre de ella, tal como declaró en el juicio que en efecto hizo.

Concluimos que erró el tribunal de instancia al determinar que existía un contrato entre Gladys Morales y la licenciada Méndez.[4] A su vez, resolvemos que erró el tribunal al incluir el monto de las pólizas en el cómputo del caudal relicto y aplicarle a ese total el 15%.

## IV

El cuarto señalamiento de error versa sobre la desestimación de la reconvención instada por Dionisio Morales y su esposa contra la licenciada Méndez. El tribunal de instancia fundamentó la desestimación en el caso *Commonwealth Loan Corp. v. García*, supra, en el cual resolvimos que, como regla general, en nuestra jurisdicción no existe per se la acción civil por daños como consecuencia de un pleito civil. Resulta imperioso señalar que la reconvención fue instada para recobrar los gastos en que incurrieron Dionisio Morales y Ramona Molina al contratar la representación legal para llevar la querella contra la

---

[3] Gladys Morales testificó que cobró el monto de las pólizas por sus gestiones y la de su agente de seguros. Ciertamente no era necesario utilizar un abogado para reclamar los beneficios. Anteriormente hemos censurado a los abogados que inducen a error a sus clientes al no informarles que pueden hacer ciertas gestiones y reclamaciones sin necesidad de los servicios de un abogado. Véase *In re Franco Rivera y Masini Soler*, 134 D.P.R. 823 (1993).

[4] Al concluir que no existió un contrato entre la licenciada Méndez y Gladys Morales, no tenemos que dilucidar el tercer señalamiento de error sobre la nulidad del contrato.

licenciada Méndez, ante el Colegio de Abogados de Puerto Rico, por haberse negado a entregarles su expediente. Demandaron, además, por los daños sufridos debido a la dilación de la licenciada Méndez al entregarles el expediente y por la presión a que fueron sometidos por ésta, siendo ellos personas de edad avanzada.

Surge con claridad que las reclamaciones de la reconvención estaban fundamentadas en hechos anteriores a la presentación de la demanda para el cobro de dinero por parte de la licenciada Méndez. Forzoso es concluir que no es de aplicación al caso de autos lo resuelto en *Commonwealth Loan Corp. v. García*, supra. Ciertamente el tribunal de instancia erró al no permitir que se pasara prueba sobre la reconvención y al desestimarla.

## V

Finalmente resolvemos que incidió el tribunal de instancia al imponerle honorarios de abogado a los recurrentes. El propósito de los honorarios de abogado es sancionar al litigante perdidoso que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obliga a la otra parte a asumir innecesariamente las molestias, los gastos, el trabajo y las inconveniencias de un pleito. *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713, 718 (1987). En el caso de autos, los recurrentes no actuaron con temeridad, pues poseían los argumentos para rebatir la cuantía de los honorarios reclamados y la existencia del contrato mismo en relación con Gladys Morales. Se elimina la concesión de honorarios de abogado.

Por los fundamentos antes expresados, *se revoca la sentencia recurrida y se devuelve el caso al tribunal de instancia para que, aplicando el principio de quantum meruit, determine la cuantía razonable a la que tiene derecho la*

*licenciada Méndez en concepto de los servicios profesionales prestados, a base de una tarifa razonable por hora trabajada. Se instruye al tribunal para que, a su vez, permita la presentación de prueba sobre la reconvención de Dionisio Morales y Ramona Molina contra la licenciada Méndez y se elimina la concesión de honorarios de abogado a favor de la recurrida. A su vez, censuramos las acciones de la licenciada Méndez al no aplicar en su práctica de la abogacía los preceptos éticos fundamentales de nuestra profesión. Se le apercibe que en el futuro debe cumplir estrictamente con lo establecido en el Código de Ética Profesional.*

*Se dictará la correspondiente sentencia.*