ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| ÁNGEL LUIS RAMOS ALVELO, ET ALS<br><br>APELADO<br><br>V.<br><br>ECONO MORALES NO. 2 INC., ET AL<br><br>APELANTE | KLAN202401084 | Apelación procedente del Tribunal de Primera Instancia, Sala de Superior de Bayamón<br><br>Caso Número: D DP2018-0188<br><br>Sobre: Daños |

Panel integrado por su presidenta, la Jueza Martínez Cordero, el Juez Cruz Hiraldo y la Juez Lotti Rodríguez.[1]

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico a 22 de octubre de 2025.

Econo Morales No. 2, Inc (Econo o apelante) mediante un recurso en *Apelación* presentado el 3 de diciembre de 2024 nos solicita que dejemos sin efecto la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de Bayamón (TPI o foro primario) el 19 de agosto de 2024, notificada el 20 de agosto de 2024. Mediante el referido dictamen, el foro primario declaró Ha Lugar la *Demanda* de daños y perjuicios del señor Ángel Luis Ramos Alvelo (señor Ramos Alvelo o apelado).

Por los fundamentos que proceden a continuación, modificamos la *Sentencia* apelada y así modificada, confirmamos.

**I.**

El 6 de abril de 2018 el señor Ramos Alvelo presentó una *Demanda*, sobre daños y perjuicios en contra de Econo y la Compañía Aseguradora XYZ.[2] Posteriormente, el apelado presentó una *Demanda Enmendada* para incluir a Integrand Issurance

---

[1] Conforme la OATA-2025-069 del 7 de mayo de 2025, mediante la cual se asignó a la Juez Glorianne M. Lotti Rodríguez en sustitución del Hon. Abelardo Bermúdez Torres.
[2] Apéndice 1 del *Recurso de Apelación,* págs. 1-3.

Company como compañía aseguradora de Econo, clarificar alegaciones y actualizar los montos reclamados en resarcimiento.[3]

En la *Demanda Enmendada* el señor Ramos Alvelo, adujo que las facilidades de Econo colindaban con su apartamento y luego de que este las remodelara, ubicó dos generadores eléctricos y un tanque en la colindancia del Condominio Irlanda. Alegó que Econo encendía los generadores constantemente, produciendo un ruido intolerable y gases nocivos para su salud. Arguyó que, por causa de la situación, tuvo que mudarse de la propiedad y dejar de pagarla para poder pagar un arrendamiento. Además, indicó que acudió al Departamento de la Vivienda y a la Oficina de Calidad Ambiental, pero no consiguió que se detuviera el uso del generador.

Por tanto, el apelado manifestó que, por causa de esta situación, sufrió daños emocionales con un valor estimado de $20,000.00 y daños económicos, estimados en $100,000.00. Así como, indicó que la actitud temeraria del apelante merecía la imposición de $10,000.00, por concepto de honorarios de abogados. De modo que, solicitó que el foro primario declarara "Ha Lugar" la *Demanda* y condenara a Econo al pago en resarcimiento, por los daños apelados, así como el pago por concepto de honorarios de abogado.

Por su parte, el 15 de junio de 2018, Econo presentó su *Contestación a la Demanda.*[4] Adujo que los daños reclamados por el señor Ramos Alvelo eran excesivos, especulativos, desproporcionados e improcedentes. Asimismo, indicó que el generador llevaba quince (15) años instalado y no había recibido quejas de los vecinos, por el ruido y los gases que produce. Manifestó que los generadores se encontraban instalados en el techo de sus facilidades y tenían una tubería ("muffler") más alto que los edificios

---

[3] Apéndice 8 del *Recurso de Apelación,* págs. 19-21.
[4] Apéndice 2 del *Recurso de Apelación,* págs. 4-6.

del Condominio Irlanda, para evitar el impacto de las emisiones. Añadió que los generadores se encendían a las 4:00 de la mañana hasta las 6:00 de la tarde, como parte de un horario especial, luego del Huracán María. Así pues, este recalcó que el uso respondió a una emergencia y que un perito electricista le daba mantenimiento al generador eléctrico todos los lunes.

El 5 de julio de 2019, el Comisionado de Seguros de Puerto Rico, compareció como Rehabilitador Auxiliar de Integrand Assurance Company. Informó que Integrand Assurance Company recibió una orden de rehabilitación, el 31 de mayo de 2019, del Tribunal de Primera Instancia, Sala Superior de San Juan, en el caso civil número SJ2019CV05526. Por esto, solicitó la paralización de los procedimientos del caso de epígrafe, según el Artículo 40.120 del Código de Seguros de Puerto Rico, Ley Núm. 77-1957, (26 LPRA sec. 4012).

Así, el 16 de julio de 2019, el Tribunal dictó Sentencia, ordenando la paralización de los procedimientos.[5] Más adelante, el 17 de octubre de 2019, el Comisionado de Seguros informó, mediante comparecencia especial, que, en el caso civil número SJ2019CV05526, el Tribunal de Primera Instancia ordenó la liquidación de que la compañía aseguradora de Econo, Integrand Assurance Company, según el Artículo 40.140 del Código de Seguros de Puerto Rico, Ley Núm. 77-1957, 26 LPRA sec. 4014. Por esto, indicó que era responsabilidad de la Asociación de Garantía de Seguros Misceláneaos proveer la defensa adecuada a las causas de acción pendientes, según el Artículo 38.180 de la Ley Núm. 77-1957, 26 LPRA sec. 3818.

Así las cosas, el 2 de diciembre de 2021, Econo y la Asociación de Garantía de Seguros Misceláneos de Puerto Rico (AGSM)

---

[5] Apéndice 4 del *Recurso de Apelación,* pág. 8.

presentaron su *Contestación a la Demanda Enmendada.*[6] En síntesis, reiteraron las defensas presentadas en la *Contestación a la Demanda,* presentada el 15 de junio de 2018. Añadieron que los generadores recibían el mantenimiento requerido por el fabricante y que la Junta de Calidad Ambiental no había levantado objeciones, en cuanto al uso de estos. Así, solicitaron que el TPI desestimara la *Demanda Enmendada.*

Luego de varios trámites procesales, el Juicio en su Fondo comenzó el 15 de septiembre de 2023 y quedó sometido el 8 de marzo de 2024. Compareció el señor Ramos Alvelo, representado por el Lcdo. Valery López Torres. De igual forma, compareció el Lcdo. Igor Domínguez Pérez, en representación de Econo. Como testigos del señor Ramos Alvelo comparecieron la Sra. Silvia Nieves Sierra y el perito, Ing. Daniel Pagán Rosa. Mientras que, como testigos de Econo comparecieron el Sr. Fidel Soto Díaz y el perito, Ing. Wilfredo Valentín Serrano. Las partes estipularon y se admitió en evidencia la siguiente prueba documental:

> Parte Demandante:
> EXHIBIT 1: Expediente Médico del Neumólogo Raúl A. Ríos Mollineda.
> EXHIBIT 2: Querella de la Junta de Calidad Ambiental.
> EXHIBIT 3: Escritura de Acción de Pago del 10 de enero de 2018.
> EXHIBIT 4: Video del 17 de noviembre de 2017.
> EXHIBIT 5: Informe de Crédito
>
> Parte Demandada:
> EXHIBIT I: Documento de la Oficina de Gerencia de Permisos de Generadores de Emergencia Comercial
> EXHIBIT II: Informe pericial del Ing. Wilfredo Valentín Serrano.

A base de la prueba desfilada y creída por el foro primario, el TPI consignó las siguientes determinaciones de hechos:

### DETERMINACIONES DE HECHOS

1. La parte demandada, Econo Morales Número 2, Inc. es una corporación doméstica, debidamente registrada en el Departamento de Estado de Puerto Rico, con capacidad para demandar y ser demandada. Su agente

---

[6] Apéndice 11 del *Recurso de Apelación,* págs. 26-29.

residente es William Morales. Su dirección física y postal es Avenida Irlanda Heights, DJ-14, Urb. Santa Juanita, Bayamón, P.R., 00956.

2. Con motivo de la liquidación ordenada por el Tribunal de Primera Instancia, Sala Superior de San Juan, la Asociación de Garantía de Seguros Misceláneos de Puerto Rico, asumió la defensa del Supermercado Econo No. 2, según el Artículo 40.140 del Código de Seguros de Puerto Rico, Ley Núm: 77-1957, (26 LPRA sec. 4014).

3. El demandante fue dueño del Apartamento #132 del Condominio Irlanda, sito en el tercer piso del Edificio B del Condominio Irlanda, en Bayamón, Puerto Rico (Apartamento #132) del 24 de agosto de 2007 hasta el 10 de enero de 2018.

4. Al momento de los hechos, el Condominio Irlanda colindaba por su lado este con las facilidades de Econo y por su lado oeste con las facilidades de una gasolinera.

5. Econo instaló dos generadores de electricidad, sobre el techo de sus facilidades, en el área más cercana a la colindancia con el Condominio Irlanda.

6. La Oficina de Gerencia de Permisos expidió un Permiso General para Generadores de Electricidad Comercial/Industrial, a favor del demandado, Econo Morales #2, en el caso número 2016-146445-PGE-005144. Autorizó el uso de dos generadores, de uso de combustible diésel, con límite de 500 horas de operación anual.

7. Según el Permiso General para Generadores de Electricidad Comercial/ Industrial, Econo instaló un generador marca Onan, en el año 2005, y un generador marca Armstrong, en el año 2001.

8. Las condiciones especiales del Permiso General para Generadores de Electricidad Comercial/ Industrial, incluyeron lo siguiente:

    a. Este permiso autoriza únicamente la instalación y uso del generador en casos de emergencia y su horario de operación máxima es de 500 horas por año.

b. El generador de electricidad se instalará en un lugar que permita ventilación. Además, tendrá una dispersión de gases adecuada; por ejemplo, a través de cualquier tubo, conducto, chimenea o canal para conducir las emisiones al aire libre. Los escapes de los generadores no pueden estar dirigidos a otras propiedades aledañas, o cercano a ventanas de la propiedad. Esta instalación se hará conforme a las leyes, códigos y reglamentos aplicables (e. g. NFPA, NEC y AEE).

c. Durante la operación del generador de electricidad, el nivel de sonido debe cumplir con el Reglamento para el Control de la Contaminación por Ruido (RCCR) de la JOA.

d. La operación del generador de electricidad no deberá causar olores objetables o desagradables más allá de los límites de los límites de su propiedad.

9. La Junta de Calidad Ambiental determinó que la instalación de los generadores de Econo, no ocasionaría impactos significativos al ambiente y expidió un endoso en el caso número 120-16-07080.

10. El 10 de octubre de 2018, la Junta de Calidad Ambiental compareció de forma especial e informó que la única querella presentada en contra de la parte demandada fue el número JCA-17-20320, instada por el demandante.

11. La Junta de Calidad Ambiental informó que, el 8 de agosto de 2018, luego del paso del huracán María, le requirió al demandante que confirmara si deseaba continuar con la investigación y este no lo hizo. Indicó que, por esto, "cerró" la querella.

12. El demandante declaró que, en el año 2016, comenzaron a ocurrir apagones continuos. Declaró que el servicio de energía eléctrica faltaba de tres a cuatro veces en semana.

13. La Sra. Silvia Nieves Sierra declaró que, en el año 2016, cuando ocurrieron los apagones, comenzó a llenarse el Apartamento #132 del Condominio Irlanda de humo y la salud del demandante comenzó a afectarse.

14. La Sra. Silvia Nieves Sierra declaró que era insoportable estar en el apartamento porque se iba la

luz frecuentemente y se prendía la planta en diferentes momentos del día. Indicó que hubo días durante los cuales estuvo constantemente prendida. Declaró que ella y el demandante se iban para su casa porque ya era insoportable estar en la propiedad.

15.     El demandante declaró que los gases que le intoxicaban en el apartamento venían de los generadores de Econo. Indicó que había otra planta de una gasolinera, al otro lado, que colindaba con su cocina.

16.     El demandante declaró que los gases de la planta de la gasolinera llegaban a su cocina, pero que los gases que afectaban el área de su cuarto y la sala provenían de los generadores de Econo.

17.     El demandante declaró que, por el uso de los generadores durante los apagones continuos, que comenzaron en, el año 2016, se desmayó varias veces por la intoxicación de los gases y el humo que entraba a su apartamento.

18.     El demandante declaró que el puesto de gasolina y Econo tenían el mismo dueño, el Sr. Willy Morales.

19.     El 20 de junio de 2017, el demandante sometió una Solicitud de Mitigación de Pérdida para la Propiedad Principal del Deudor, ante la Oficina del Comisionado de Instituciones Financieras. Indicó que sus circunstancias económicas habían cambiado adversamente, por razón de enfermedad, por lo que deseaba entregar la propiedad.

20.     En la Solicitud de Mitigación de Pérdida para la Propiedad Principal del Deudor, presentada por el demandante, este manifestó lo siguiente:

Yo Ángel L. Ramos Alvelo, mayor de 51 años, tuve que abandonar mi Apt, #132, Condominio Irlanda Bayamón porque el Supermercado Econo y el puesto de gasolina Puma tienen tres plantas de luz que trabajan con diésel localizadas en la verja divisoria y se va la luz muy frecuentemente los últimos años y el ruido ensordecedor y la emanación del humo tóxico del diésel impregnan nuestro apartamento causando daño a mi salud y tranquilidad. Es como vivir en un infierno [...].

21.     El 5 de septiembre de 2017, el demandante acudió a la oficina del Dr. Ríos Mollineda porque tenía tos, dificultad para respirar y congestión nasal.

22.     El 5 de septiembre de 2017, el neumólogo, Dr. Ríos Mollineda le diagnóstico al demandante asma leve intermitente.

23.     El 5 de septiembre de 2017, el neumólogo, Raúl A. Ríos Mollineda, le recomendó al demandante que evitara áreas contaminadas.

24.     La Sra. Nieves Sierra declaró que el demandante comenzó a vivir junto a ella, en su propiedad, sita en la Calle Campeche WB2 de la Urb. Santa Juanita, Bayamón, en el mes de agosto del año 2017, por causa de los humos, que tuvo que abandonar el Apartamento #132 del Condominio Irlanda.

25.     El demandante comenzó a vivir con la Sra. Silvia Nieves Sierra en agosto de 2017.

26.     La Sra. Nieves Sierra declaró que, al momento en que el demandante se mudó con ella, esta pagaba un canon hipotecario de $375.00 de hipoteca.

27.     La Sra. Nieves Sierra declaró que el demandante le pagaba $300.00 mensuales, para cubrir los gastos de vivienda.

28.     El demandante cesó de vivir con la Sra. Nieves Sierra en el año 2021.

29.     El 10 de enero de 2018, el demandante otorgó la Escritura Número Uno, intitulada Escritura de dación en pago, mediante la cual le cedió y traspasó el Apartamento #132 del Condominio Irlanda al Banco Popular de Puerto Rico.

30.     El demandante declaró que otorgó la Escritura de dación en pago a favor del Banco Popular de Puerto Rico, debido a que no logró vender la propiedad, por causa de la contaminación de las emisiones de los generadores.

31.     El perito de la parte demandante declaró que el área de Irlanda Heights cuenta con pendientes pronunciadas. Declaró que el nivel del terreno, donde están ubicadas las facilidades de Econo, es más bajo que el nivel del Condominio Irlanda.

32.     El perito de la parte demandante declaró que los contaminantes emitidos por los generadores eléctricos incluyen monóxido de carbono, bióxido de azufre, óxido de nitrógeno, material particulado fino e hidrocarburos. Indicó que estos tienen efectos adversos en la salud.

33.     El perito de la parte demandante manifestó que los contaminantes tienen un olor que se relaciona con el tipo de combustible que es utilizado por los generadores.

34.     El perito de la parte demandante declaró que, a pesar de que las condiciones especiales del permiso, emitido por la Oficina General de Permisos, establecían que no se debía dirigir la fuente de emisión de los generadores hacia otras propiedades, los generadores de Econo tenían chimeneas apuntadas en la dirección del Condominio Irlanda Heights.

35.     El perito de la parte demandante declaró que, debido a la localización geográfica y relativa del Condominio Irlanda y Econo, así como el fenómeno "viento abajo", los gases de los generadores impactaban el Apartamento #132 del Condominio Irlanda.

36.     El perito de la parte demandante declaró que, según la información sobre los vientos, publicada por la Red Meteorológica de la Autoridad de energía Eléctrica, alrededor de un 62% del tiempo, el viento viajaba en dirección del este al oeste. Por este fenómeno, manifestó que las emisiones eran empujadas hacia el Apartamento #132 del Condominio Irlanda.

37.     El Condominio Irlanda está compuesto por múltiples edificios de cuatro niveles.

38.     Entre Econo y el Edificio B del Condominio Irlanda, existe otro edificio perteneciente al Condominio Irlanda.

39.     El perito de la parte demandante declaró que, a pesar de que las chimeneas de los generadores de Econo eran elevadas, estas no sobrepasaban la elevación del Edificio B del Condominio Irlanda Heights.

40.     El Sr. Fidel Soto Díaz, administrador de Econo, declaró que el supermercado ha tenido generadores por alrededor de 40 años.

41.    El Sr. Fidel Soto Díaz declaró que los generadores de Econo, recibían mantenimiento, luego de cada 200 horas de uso.

42.    El Sr. Fidel Soto Díaz declaró que no recibió quejas, sobre el uso de los generadores ni sostuvo una conversación directa con el demandante.

43.    El Sr. Fidel Soto Díaz declaró que, en el año 2018, Econo reemplazó el generador por uno que no emitía humo, debido a que utilizaba una nueva tecnología de reciclaje de gases.[7]

Así pues, el 19 de agosto de 2024, notificada el 20 de agosto de 2024, el foro primario, luego de examinar la totalidad de los hechos y el derecho aplicable declaró Con Lugar la *Demanda Enmendada* presentada por el señor Ramos Alvelo.[8] Por tanto, concluyó que Econo responde civilmente por los daños ocasionados al señor Ramos Alvelo, bajo los Artículos 1802 y 1808 del Código Civil del 1930, 31 LPRA ant sec. 5141 y 5147, y el Artículo 277 del Código de Enjuiciamiento Civil de 1933, 32 LPRA sec. 2761. El TPI adjudicó en total de daños la cantidad de $57,700.00, de los cuales $36,600.00 son por daños físicos, mientras que el restante de $21,100.00 por angustias mentales. De manera que, el cálculo quedó de la siguiente forma:

**DAÑOS FÍSICOS Y ECONÓMICOS**

| | | |
|---|---|---|
| 1. | Diagnóstico clínico de enfermedad de asma - leve e intermitente | $20,000.00 |
| 2. | Pérdida recurrente de sueño y descanso por causa de los ruidos y emisiones durante 11 meses (septiembre 2016-agosto 2017) | $6,600.00 ($600.00 por mes) |
| 3. | Pérdida del valor de la propiedad en el mercado y daños al crédito | $10,000.00 |
| | **TOTAL DE DAÑOS FÍSICOS** | **$36,000.00** |

**SUFRIMIENTOS Y ANGUSTIAS MENTALES/DAÑOS MORALES**

| | | |
|---|---|---|
| 1. | Sufrimientos y angustias mentales por causa del diagnóstico de la enfermedad de asma leve intermitente | $9,000.00 |

---

[7] Apéndice 14 del *Recurso de Apelación,* págs. 51-79.
[8] Íd.

| | | |
|---|---|---|
| 2. | Sufrimientos y angustias mentales por la pérdida de la tranquilidad y paz en su propiedad por causa de los ruidos y emisiones durante 11 meses (septiembre 2016-agosto 2017) | $6,600.00 ($600.00 por mes) |
| 3. | Sufrimientos y angustias por el menoscabo del uso y disfrute del Apartamento #132 del Condominio Irlanda | $5,500.00 ($500.00 por mes) |
| | **TOTAL DE DAÑOS MORALES** | **$21,100.00** |

Ahora bien, del total de $57,700.00 el foro primario descontó 30% de la responsabilidad a la tercera fuente de emisiones que alcanzaban la propiedad del apelado, a saber $17,310.00, quedando un balance de $40,390.00.

En desacuerdo, Econo presentó *Moción solicitando enmienda a determinaciones de hechos, solicitando determinaciones de hechos adicionales y reconsideración.*[9] Por su parte, el señor Ramos Alvelo presentó su oposición a dicha moción.[10] No obstante, el 4 de noviembre de 2024, el TPI declaró "No Ha Lugar" la moción presentada por Econo.[11]

Inconforme con el proceder del TPI, el 3 de diciembre de 2024, el apelante acudió ante este Tribunal mediante recurso de *Apelación* y señala los siguientes errores:

> **Erró el TPI en la apreciación de la prueba pericial presentada, cometiendo error manifiesto al aquilatar toda la prueba presentada, lo que no representa el balance más justiciero y jurídico de la totalidad de la prueba presentada.**

> **Erró el TPI al incluir en su *Sentencia* Determinaciones de Hecho sobre prueba que no se desfiló en el juicio según las notas del caso que suscribe en la vista en su fondo de este caso.**
> **Erró el TPI al aplicar la doctrina de responsabilidad absoluta, la cual fue revoca por el Honorable Tribunal Supremo.**

> **Erró el TPI al otorgar una cuantía monetaria exageradamente alta y usar como casos comparables jurisprudencia no aplicable para justificar dicha cuantía.**

---

[9] Apéndice 15 del *Recurso de Apelación,* págs. 80-97.
[10] Apéndice 16 del *Recurso de Apelación,* págs. 98-104.
[11] Apéndice 16 del *Recurso de Apelación,* págs. 105-106.

**II.**

**A. Deferencia judicial**

Es doctrina reiterada que los jueces del foro primario gozan de amplia discreción y flexibilidad en el manejo cotidiano y la tramitación de los asuntos que se ventilan ante sus salas. *BPPR v. SLG Gómez-López*, 213 DPR 314, 333-334 (2023); *In re Collazo I,* 159 DPR 141, 150 (2003); *Vives Vázquez v. ELA,* 142 DPR 117, 141 (1996). La deferencia a su criterio responde al principio de que los tribunales apelativos no deben sustituir ni dirigir la conducción del trámite ordinario de los casos que corresponden al foro primario. *BPPR v. SLG Gómez-López, supra* (citando a *Mejías Montalvo v. Carrasquillo Martínez,* 185 DPR 288, 306-307 (2012)). Como es sabido, dicho foro es el que mejor conoce las particularidades del caso y quien está en mejor posición para adoptar las medidas necesarias que permitan cimentar el curso a trazar y así llegar eventualmente a una disposición final. Íd

En consecuencia, la norma general dispone que los foros apelativos no intervendrán en la discreción de los foros primarios, salvo que las decisiones emitidas resulten arbitrarias o en un abuso de su discreción. *BPPR v. SLG Gómez-López, supra,* pág. 334; *VS PR, LLC v. Drift-Wind,* 207 DPR 253, 273 (2021).  El uso adecuado de esa discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *BPPR v. SLG Gómez-López, supra,* pág. 335; *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013); *Rivera Durán v. Banco Popular,* 152 DPR 140, 155 (2000).

Igualmente, la deferencia cede cuando se acredita que el foro primario actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitaría un perjuicio sustancial a la parte afectada por su determinación. *BPPR v. SLG Gómez-López, supra,* págs. 334-335. Por lo tanto, si en la

solicitud ante nuestra consideración no concurren tales criterios y la actuación del foro primario cuenta con un fundamento razonable debe prevalecer el criterio del juez de instancia, quien es, a fin de cuentas, el llamado a dirigir el proceso. *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

### B. Apreciación de la prueba

Según explicamos, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, los tribunales apelativos no deben intervenir para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el foro primario. Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V*; Peña Rivera v. Pacheco Caraballo,* 213 DPR 1009, 1024 (2024); *Ortíz Ortíz v. Medtronic,* 209 DPR 759, 778 (2022); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). Incurre en pasión, prejuicio o parcialidad el juez que actúe movido por inclinaciones personales, preferencias o rechazos con respecto a las partes, o sus causas no admiten cuestionamiento sin importar la prueba recibida en sala e incluso antes de que someta prueba alguna. *Ortíz Ortíz v. Medtronic, supra,* pág. 779 (citando a *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013)). De otro lado, el error manifiesto ocurre cuando este foro revisor está convencido de que se cometió un error "porque existe un conflicto entre las conclusiones y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Méndez v. Morales*, 142 DPR 26, 36 (1996).

Ahora bien, la llamada deferencia judicial está predicada en que los jueces del TPI están en mejor posición para aquilatar la prueba testifical porque tuvieron ante sí la oportunidad de oír, ver y apreciar el comportamiento del testigo. *Peña Rivera v. Pacheco Caraballo, supra,* pág. 1025 (citando a *Ortíz Ortíz v. Medtronic, supra,* pág. 779). De manera que, nuestro Tribunal Supremo ha enfatizado que la norma de autolimitación judicial cede cuando de un análisis

integral de la prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que se estremezca nuestro sentido básico de justicia. *Pueblo v. Cabán Torres*, 117 DPR 645, 657 (1986).

En lo pertinente, el aludido el error manifiesto que dispone la Regla 42.2 de Procedimiento Civil, *supra,* ocurre cuando de un análisis de la totalidad de la prueba, el foro apelativo queda convencido de que se cometió un error, aunque haya evidencia que sostenga las conclusiones de hechos emitidas por el foro primario. *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 793 (2020); *Méndez v. Morales*, *supra,* pág. 36. "Se incurre en un error manifiesto cuando la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". *Gómez Márquez et al. v. El Oriental*, *supra,* pág. 793; *Pueblo v. Toro Martínez*, 200 DPR 834, 859 (2018).

### C. Daños

El ordenamiento jurídico vigente a los hechos del caso es el Código Civil de 1930 (derogado), 31 LPRA ant. sec. 1 *et seq.* El Artículo 1802 del Código Civil de 1930, dispone que "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado." 31 LPRA sec. 5141. La norma amplia y general del Art. 1802 del Código Civil, *supra*, le otorga al juzgador vasto margen para dar contenido concreto al momento de dictar sentencia. *López v. Porrata Doria*, 169 DPR 135, 152 (2006). Para alcanzar dicha finalidad, este está llamado a interpretar la norma a partir de los hechos a los que se enfrenta. Íd.

Así pues, es norma reiterada que sólo procede la reparación de un daño cuando se demuestren los siguientes elementos indispensables: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño

ocasionado; y (3) el daño real causado al reclamante. *Inmob. Baleares et al. v. Benabe et al.,* 214 DPR 1109, 1125 (2024); *Sucn. Mena Pamias et al. v. Jiménez et al.*, 212 DPR 758, 768 (2023); *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010). Como regla general, en los casos de daños y perjuicios el demandante tiene el peso de la prueba para demostrar que el demandado fue negligente y dicha acto u omisión le ocasionó daños. *Matos v. Adm. Servs. Médicos de P.R.*, 118 DPR 567, 569 (1987).

Nuestro más alto foro local ha definido la culpa o negligencia como la falta del debido cuidado, que consiste en no anticipar ni prever las consecuencias racionales de un acto o su omisión al que una persona prudente y razonable habría previsto en las mismas circunstancias. *Mena Pamias et al. v. Jiménez et al., supra,* pág. 768; *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, 976-977 (2021). Ahora bien, el nexo causal no se refiere a toda causa o condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce, según la experiencia general. *Mena Pamias et al. v. Jiménez et al.*, *supra,* pág. 768; *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 484-485 (2022); *Soc. de Gananciales v. Jerónimo Corp.*, 103 DPR 127, 134 (1974). Por tanto, se requiere que entre dicho acto culposo o negligente y el daño sufrido deba existir una relación entre el daño y la consecuencia razonable, común y natural de la acción u omisión imputada al demandado. *Cruz Flores et al. v. Hosp. Ryder et al., supra,* pág. 482; *Montalvo v. Cruz,* 144 DPR 748, 756-757 (1998).

### D. Artículo 277 del Código de Enjuiciamiento Civil

En lo pertinente a la controversia ante nos, el Artículo 277 del Código de Enjuiciamiento Civil de 1933, según enmendado, 32 LPRA sec. 2761, dispone:

> Todo lo que fuere perjudicial a la salud, indecente u ofensivo a los sentidos, o que interrumpa el libre uso de la propiedad, de modo que impida el cómodo goce de

la vida o de los bienes, o que estorbare el bienestar de todo un vecindario, o un gran número de personas, o que ilegalmente obstruyere el libre tránsito, en la forma acostumbrada, por cualquier lago, río, bahía, corriente, canal o cuenca navegable, o por cualquier parque, plaza, calle, carretera pública y otras análogas, constituye un estorbo público que da lugar a una acción. Dicha acción podrá ser promovida por cualquiera persona, agencia pública o municipio cuyos bienes hubieren sido perjudicados o cuyo bienestar personal resulte menoscabado por dicho estorbo público; y la sentencia podrá ordenar que cese aquella, así como decretar el resarcimiento de los perjuicios; lo aquí provisto no podrá aplicarse a las actividades relacionadas con el culto público practicado por las diferentes religiones. Disponiéndose, que nada de lo aquí dispuesto limitará los poderes de la Junta de Calidad Ambiental para promulgar los reglamentos a que está autorizada por ley.

Además, esta legislación no limitará aquellos poderes otorgados por ley y que puedan adoptar los municipios mediante ordenanzas municipales en la implantación de los procesos y procedimientos sobre estorbos públicos en sus correspondientes jurisdicciones.

## III.

En el caso ante nos, el apelante solicita que intervengamos con la credibilidad y el valor que le mereció el foro primario a la prueba presentada durante el Juicio en su Fondo. En esencia, éste señaló que el foro primario cometió error manifiesto al aquilatar la prueba presentada. Asimismo, el apelante arguyó que incidió el TPI al aplicar la doctrina de responsabilidad absoluta y otorgar una cuantía monetaria exageradamente alta a favor del apelado.

Surge de las determinaciones de hechos emitidas por el TPI, que el señor Ramos Alvelo fue dueño del Apartamento #132 del Condominio Irlanda en Bayamón. Al momento de los hechos, el Condominio Irlanda colindaba por su lado Este con las facilidades de Econo y por su lado Oeste con las facilidades de una gasolinera. Allí, Econo tenía instalado dos (2) generadores de electricidad, sobre el techo de sus facilidades, en el área más cercana a la colindancia con el Condominio Irlanda. En su testimonio el apelado aseguró que, en el año 2016 comenzaron a ocurrir apagones continuos, así que

el servicio de energía eléctrica faltaba de tres (3) a cuatro (4) veces en semana.

Ante ello, el apelado y su pareja en aquel momento, la señora Silvia Nieves Sierra, declararon que los gases de los generadores de Econo le llenaban de humo e intoxicaban el apartamento. El señor Ramos Alvelo aseguró que pasaba más tiempo en casa de la señora Silvia Nieves Sierra, porque le era insoportable estar en su propiedad. Además, según estos alegaron, el humo afectó la salud del señor Ramos Alvelo. Incluso, estos declararon que el uso de los generadores durante los apagones continuos, que comenzaron en el año 2016, ocasionó que el apelado se desmayara varias veces por la intoxicación de los gases y el humo que entraba a su apartamento.

Así las cosas, el 20 de junio de 2017, el apelado indicó que tuvo que entregar el apartamento en el Condominio Irlanda Bayamón, dado a que sus circunstancias económicas habían cambiado adversamente, por razón de enfermedad. En específico, este manifestó que tuvo que abandonar dicho apartamento porque Econo y el puesto de gasolina tenían generadores que lo colmaban de humo tóxico del diésel, causándole daño a su salud y tranquilidad. Posteriormente, el 5 de septiembre de 2017, el señor Ramos Alvelo acudió a la oficina del Dr. Ríos Mollineda porque tenía tos, dificultad para respirar y congestión nasal, a lo que este le diagnosticó asma leve intermitente y le recomendó evitar áreas contaminadas.

Según reseñamos, el Artículo 1802 del derogado Código Civil 1930, dispone que quien mediante acción u omisión cause daño a otro, cuando intervenga culpa o negligencia está obligado a reparar dicho daño. 31 LPRA sec. 5141. De manera, que toda controversia en que aleguen daños y perjuicios es necesario que el demandante demuestre que la negligencia del demandado fue la causa más probable del perjuicio sufrido.

Igualmente, en cuanto a la revisión de las determinaciones del TPI, este Tribunal debe abstenerse de modificar la valoración de la prueba y la adjudicación de daños realizada por el foro primario. *Santiago Montañez v. Fresenius Medical,* 195 DPR 476, 490 (2016). No obstante, la deferencia cede cuando se acredita este foro revisor está convencido de que se cometió un error "porque existe un conflicto entre las conclusiones y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Méndez v. Morales,* 142 DPR 26, 36 (1996).

Luego de un examen minucioso de la prueba y los testimonios emitidos en el Juicio en su Fondo, revelan que el apelado no demostró la mayoría de los daños que el TPI adjudicó a su favor. En primer lugar, el foro primario adjudicó una partida de $20,000.00 y $9,000.00 por el diagnóstico de asma leve e intermitente, así como las angustias y el sufrimiento causado por ese cuadro clínico. No obstante, no encontramos evidencia que demuestre un nexo causal entre el diagnostico de asma y el humo que generaba la planta eléctrica de Econo. Dado que, el asma del apelado es leve e intermitente y pudo haber tenido múltiples orígenes. Por lo tanto, recaía sobre el apelado la carga de probar que su condición fue originada por el generador eléctrico. En este caso, no se demostró tal nexo causal entre el asma leve y la planta eléctrica de Econo. Esto, ya que el señor Ramos Alvelo tan solo presentó el diagnóstico de asma y su creencia de que esta fue causada por el generador del apelante. Así pues, resolvemos que incidió el foro primario al adjudicar la partida por el asma del apelado, toda vez que la prueba presentada no fue lo suficiente para concluir que fue causado por el generador eléctrico de Econo.

De igual forma, no procede la partida por la pérdida recurrente de sueño y descanso durante 11 meses (septiembre 2016 – agosto 2017), causada alegadamente por los ruidos y emisiones de

la planta eléctrica de Econo. El foro primario otorgó una compensación de $600 mensuales por la supuesta pérdida de sueño y descanso, atribuida a los ruidos y emisiones. Esto, pese a que dicho foro no contó con prueba sobre la frecuencia con la que se encendieron los generadores, el horario ni la duración durante el período comprendido entre septiembre de 2016 y agosto de 2017. Por lo tanto, concluimos que erró el TPI al adjudicar una partida por perdida de sueño y descanso cuando no se presentó prueba que la luz se fuera durante la noche ni que la planta eléctrica estuviere prendida durante el periodo de descanso del apelado.

Tampoco se demostró, más allá del testimonio del apelado, que su decisión de intentar vender y posteriormente entregar su apartamento en dación en pago se debiera al uso recurrente de los generadores eléctricos por parte de Econo durante los apagones del año 2016. Así pues, resolvemos que incidió el foro primario al adjudicar la pérdida del valor de la propiedad en el mercado y daños al crédito del apelado, cuando no se presentó prueba del valor de la propiedad y una reducción de esta, por causa del ruido y humo del generador de Econo.

Por último, surge del testimonio del apelado, el cual le mereció credibilidad al foro primario, que este sufrió daños y angustias mentales por la pérdida de la tranquilidad y paz en su propiedad por causa de los ruidos y emisiones que expulsaba el generador eléctrico de Econo. Igualmente, por el menoscabo del uso y disfrute de su propiedad. Esto, ya que surge de su testimonio que en los momentos que el generador estaba en funciones, este prefería irse a la casa de la señora Silvia Nieves Sierra porque era imposible permanecer allí. Ante ello, resolvemos que el foro primario correctamente adjudicó la partida de sufrimientos y angustias mentales a favor del apelado.

Es por ello, que se mantiene la compensación otorgada al señor Ramos Alvelo la cuantía de $6,600.00 por los sufrimientos y

angustias mentales por la pérdida de la tranquilidad y paz en su propiedad por causa de los ruidos y emisiones; y de $5,500.00, por los sufrimientos y angustias por el menoscabo del uso y disfrute de su apartamento, para un total de $12,100.00. No obstante, recordemos que a Econo se le condenó con un 70% de responsabilidad, de modo que la cuantía sería de $8,470.00. Conforme lo antes expuesto, se deja sin efecto las demás cantidades concedidas por el foro primario.

**IV.**

Por los fundamentos expuestos, modificamos la *Sentencia* apelada y así modificada, confirmamos.

Notifíquese.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones